FILED 11 MAY '23 10:51 USDC-ORP

Kimberly Schoene, Plaintiff Pro Se
1801 NW Upshur, Suite 100
Portland, OR 97209
(503) 713-7000
hissmallvoice@gmail.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **KIMBERLY SCHOENE**, an Oregon resident,<br><br>Plaintiff,<br><br>v.<br><br>**PENELOPE CHRISTENSEN**, an Oregon resident; and **PORTLAND HAIR EXTENSIONS BY PENELOPE**, an active Oregon corporation,<br><br>Defendants. | ) CASE NO. 3:23-CV-693-AN<br>)<br>) **COMPLAINT**<br>) 1) Federal Trademark Infringement<br>) 2) Federal Trademark Counterfeiting<br>) 3) Federal Trademark Dilution<br>) 4) Federal Unfair Competition<br>) 5) Federal Unfair and Deceptive Trade Practices<br>) 6) Oregon Trademark Infringement<br>) 7) Oregon Trademark Counterfeiting<br>) 8) Oregon Trademark Dilution<br>) 9) Oregon Unfair Trade Practices<br>)<br>) **DEMAND FOR JURY TRIAL**<br>) |

Plaintiff Kimberly Schoene ("Plaintiff"), Pro Se, states the following for her Complaint against Defendant Penelope Christensen and Defendant Portland Hair Extensions by Penelope:

## INTRODUCTION

1)      Plaintiff brings this action at law and in equity for trademark infringement, counterfeiting and dilution, unfair competition, and unfair business practices by Defendants, arising under the Trademark Act of 1946, 15 USC §1051 *et. seq.* (2009) ("Lanham Act"), and under Oregon Revised Statutes 647.105, *et. seq.*; the Unfair Trade Practices Act, ORS 646.605, *et. seq.*

2)      This Complaint is supported by the accompanying Declaration of Kimberly Schoene in Support of Complaint and Motion for Preliminary Injunction and exhibits thereto ("Decl.").

3)      Over the past 25 years, Kimberly Schoene mastered the art of hair extensions by developing high-level skills in nearly all areas of hair dressing, including hair extensions.

Receipt # 102605

Kimberly Schoene created her own unique way(s) of installing hair extensions, is a *"master colorist"* and has achieved master level skills in all aspects of hair extensions, including installation, coloring, hair loss, and an extensive working knowledge of all aspects of hair extension services and products. (Decl. ¶38, 40, 45, 92-111, 121-131; **Exs. B, C, J, M.**)

4)      Plaintiff's Service Mark ***"Pdx hair extensions"*** was registered with the US Patent and Trademark Office on July 20, 2021, has been in use since February 2, 2016, and in use in commerce since February 2, 2017 (Decl. ¶5, 15, 16, 41, 73; **Exhibit A,** USPTO Certificate).

5)      Plaintiff Kimberly Schoene has actively marketed the name *"PDX Hair Extensions"* spending countless hours and money in marketing and promoting PDX Hair Extensions and her own name, using herself as the primary marketing tool in online videos, as well as the quality of the hair products she uses (the hair, coloring dyes, etc.), photographs of clients' hair before/after the hair extensions, clients' comments, as well as the aesthetically pleasing appearance of the salon named *"PDX Hair Extensions"* that is located in the "Pearl District" in NW Portland. (*Id.*, and Decl. ¶42, 82; **Exhibits B, C, J, M, N.**)

6)      Kimberly Schoene and her trademark-named salon, *"PDX Hair Extensions,"* developed a highly-regarded reputation as the ***"best in hair extensions' service in the Portland area"*** based on her experience, skills, knowledge, long-time build-up of clients, word of mouth, online testimonials, organic searches (due to name recognition). (Decl. ¶44, 89, 96, 121; See **Exhibits B, C, F-1.**)

7)      PDX Hair Extensions has strong name recognition in the Portland-area hair dressing industry, and because of the outstanding reputation and knowledge of Plaintiff. (*Id.*, and Decl. ¶45, 82, 123).

8)      Without Plaintiff's consent or authorization, Defendants are using the same three (3) words in the same sequential order, ***"PDX Hair Extensions"*** and/or ***"pdxhairextensions"*** and/or ***"#pdxhairextensions,"*** in online commerce and other forms of advertising or marketing (**Defendants' *"Infringing Use"*)** of Plaintiff's Service Mark – see Decl. ¶6, 13, 21-30, 48, 51, 112-120; **Exhibits D, E, F, G, H, I, J, K, L;** *see also* **Exhibit M**.

9)      Defendants' Infringing Use is indistinguishable from Plaintiff's Service Mark *"Pdx hair extensions."* (Decl. ¶53; **Exhibits D-L.**)

10)     Defendant Christensen has used Plaintiff's Service Mark *"Pdx hair extensions"* and Plaintiff's salon's name *"PDX Hair Extensions"* as if she (Christensen) herself is PDX Hair Extensions or affiliated with the salon PDX Hair Extensions and/or Plaintiff Kimberly Schoene, or is part-owner of PDX Hair Extensions, when Defendants have no affiliation with Plaintiff Kimberly Schoene or PDX Hair Extensions, whatsoever.  (Decl. ¶47, 63-64, 116, 119.)

11)     The Portland-area market for hair extensions in which Plaintiff and Defendant compete is limited, and the number of salons that provide upper-end hair extension services is relatively large, making it more likely for consumers to confuse the Defendants' advertisement and link to her website, as that of Plaintiff's salon, the actual PDX Hair Extensions owned by Kimberly Schoene.  (Decl. ¶53, 54, 55, 56, 124.)

12)     In fact, Plaintiff presents evidence that consumer confusion has occurred, repeatedly, as those consumers believed they were locating Plaintiff's salon "PDX Hair Extensions" when they were deceived by the online information posted by Defendants (see Decl. ¶11, 43, 54.)

13)     As PDX Hair Extensions' direct competitor, Defendants are offering the hair extensions services to the same consumer base in the Portland area as is Kimberly Schoene, *and* Defendants

advertise on the same channels of trade (via internet searches and social media websites). (Decl. ¶55, 121-131; **Exhibits B, J**; see generally **Exhibits D-L.**)

14)    Christensen left PDX Hair Extensions and opened her own hair extensions' salon only six (6) blocks away from Plaintiff's salon to further confuse the public when searching on maps. (Decl. ¶11, 22, 59, 80, 93, 114(h), 118; see **Exhibits B-17, E-2, K-1**.)

15)    Defendant(s) are not only direct competitors of Plaintiff, but Defendant Christensen shares a mutual history with Plaintiff.  Plaintiff brought on Defendant Christensen as an independent contractor at PDX Hair Extensions from May 2017 until April 2021, and trained Christensen in every aspect of hair extensions.  (Decl. ¶34, 49, 60-62; **Exhibit O.**)

16)    Upon leaving PDX Hair Extensions, Christensen began renting space in another salon, and at some time began using Plaintiff's Service Mark *"Pdx hair extensions."* Defendant Christensen is intimately familiar with Plaintiff's Service Mark *"Pdx hair extensions"* and the reputation and brand name it represents.  Thus, Defendants' use of the words *"Pdx hair extensions"* is a blatant attempt to use, display, advertise and market on the reputation of Plaintiff and her salon, PDX Hair Extensions, to free-ride on Plaintiff's reputation as the preeminent hair extension service in the Portland area.  (Decl. ¶60, 61, 92-102.)

17)    Defendants' continual and repeated use of the words *"Pdx hair extensions"* (with or without spaces between words) imitates Plaintiff's Service Mark *"Pdx hair extensions"* in a manner that has and is likely to cause consumer confusion and deceive the public regarding the source, sponsorship, and/or affiliation of the hair extension service.  Defendant Christensen's use of the words in Plaintiff's Service Mark *"Pdx hair extensions"* is therefore unlawful, and is causing irreparable harm to Plaintiff financially, and diluting Plaintiff's brand by tarnishing Plaintiff's brand.  (Decl. ¶14, 64, 66, 116, 120; **Exhibits D-L.**)

18)     Given the undisputable facts that Defendants are a direct competitor of Plaintiff, and Plaintiff trained Defendant Christensen, Christensen has clearly acted in bad faith, knowingly and intentionally using Plaintiff's Service Mark *"Pdx hair extensions"* in online commerce.

19)     Christensen has continued to deceive consumers, repeatedly, falsely claiming in online media that she is either affiliated with or part-owner with Kimberly Schoene in PDX Hair Extensions, and started her own salon only six (6) blocks away from the actual PDX Hair Extensions owned by Plaintiff, in a in bad faith effort to further confuse consumers.

20)     Because of Defendants' bad faith, Plaintiff requests the court enter a judgment in the amount that is three times the sum of the Defendants' profits and Plaintiff's damages.

21)     Defendants are continually infringing on Plaintiff's Service Mark through intentionally **causing consumer confusion** as to the source of the hair extensions' services and products, through deception in the use and display of the three (3) words *"PDX Hair Extension"* in sequential order, in online advertising and marketing by posting on social media websites, using the terms *"PDX Hair Extensions"* and/or *"pdxhairextensions"* and/or *"#pdxhairextensions,"* as if Defendants are the actual PDX Hair Extensions (owned by Plaintiff) and/or affiliated with Plaintiff Kimberly Schoene when they are not, and do not have any endorsement from Plaintiff.

22)     In fact, Defendants' use is not only a violation of federal and state law, it is a violation of the parties' agreement, indicating Defendant Christensen's motivation and intent to try and mimic Plaintiff's business, to steal Plaintiff's customers or otherwise make herself and her salon to be that of Plaintiff's salon, which has severely damaged Plaintiff financially.

23)     Defendants have **counterfeited** Plaintiff's Service Mark, by using the same three (3) words, in the same sequential order that the USPTO trademarked: ***"Pdx hair extensions."***

Defendants' Infringing Use is the exact same three (3) words in the exact same sequential order, or a "replica" or "counterfeit" of Plaintiff's Service Mark.  (Decl. ¶9, 14, 48, 65; **Exhibits D-L.**)

24)    Defendants have **caused <u>dilution</u>** of Plaintiff's Service Mark through tarnishing Plaintiff's highly-esteemed reputation in the hair salon industry in the Portland area, by leading consumers to believe that Defendants are PDX Hair Extensions and by inadequate performance by Defendants that tarnishes Plaintiff's reputation.  (Decl. ¶33, 49, 66, 85, 120, 132; **Exhibits M-2 to M-3, M-9 to M-13;** photos at **Ex. N.**)

25)    Plaintiff has attempted to make Defendants cease and desist the illegal activities, but Defendants refused, and have continued to use Plaintiff 's Service Mark, by continually posting false advertisements using the three sequential words in Plaintiff's Service Mark *"Pdx hair extensions,"* in violation of law.

26)    Without Plaintiff's consent, Defendants' have knowingly, intentionally, repeatedly and continuously engaging in the Infringing Use in online commerce, which is causing the likelihood of confusion to the consuming public, in violation of Plaintiff's Service Mark rights and protections under federal and state law.   (Decl. ¶11, 51; **Exhibits D-L.**)

27)    A likelihood of confusion exists here because when consumers have viewed the infringing mark of Defendants, they have believed that the service for hair extensions is either that of Plaintiff, or is associated with that of Plaintiff, when it is not.

28)    Plaintiff has been and is continuously suffering financial damages, as well as serious degrading of her brand name that she built up over many years, due to the malicious and repeated actions by Defendant Christensen, who is acting without regard to the trademark protections, remedies, and business trade law which she continues to violate despite proper notice.   (Decl. ¶68, 119, 134-137.)

29)    Plaintiff believes Defendants have been using the Service Mark since Christensen founded PHEBP in July, 2021; however, it became a serious issue to Plaintiff beginning in November, 2022 when a client at Plaintiff's salon reported serious deception on the part of Penelope Christensen (Decl. ¶12, 31-33; **Exhibits M-2 to M-3, M-15**).  Once Plaintiff learned this, she began pursuing the trademark infringement claim, notifying Defendant Christensen in a letter sent January 4, 2023.  (Decl. ¶7, 13, 35; **Exhibit P**.)

30)    Among other relief, Plaintiff asks this Court to:

   a)  Preliminarily enjoin Defendants from using, displaying, advertising, or any form of marketing bearing a confusingly similar imitation of Plaintiff's Service Mark *"Pdx hair extensions"*;

   b)  Permanently enjoin Defendants from using, displaying, advertising, or any form of marketing bearing a confusingly similar imitation of Plaintiff's Service Mark *"Pdx Hair Extensions"*;

   c)  Award Plaintiff monetary damages and to treble that award;

   d)  Require Defendants to disclose the amount of all profits from sales of the use of Plaintiff's Service Mark *"PDX Hair Extensions"*; and

   e)  Award Plaintiff punitive damages, and all her legal fees, and costs.

## PARTIES

31)    **PLAINTIFF KIMBERLY SCHOENE** ("Kimberly Schoene" or "Kim Schoene" or "Schoene") is and was a resident of the State of Oregon, City of Portland, County of Washington, at all material times.

32)    At all material times, Kimberly Schoene's place of business was and is in the State of Oregon, City of Portland, and the County of Multnomah.

33)    Kimberly Schoene is the sole owner and operator of PDX Hair Extensions, and has continuously owned and operated PDX Hair Extensions since it was founded to current.

34)    **DEFENDANT PENELOPE CHRISTENSEN ("Christensen")** is and was a resident of the State of Oregon, City of Portland, and the County of Multnomah, at all material times.

35)    **DEFENDANT PORTLAND HAIR EXTENSIONS BY PENELOPE ("PHEBP")** is an active Oregon corporation, registering with the Oregon Secretary of State on July 6, 2021.

36)    Defendant PHEBP's principal place of business is 2869 NE Sandy Blvd., #537, Portland, OR 97232.  This address is presumed to be the home address of Defendant Christensen, because that is the same address of the "Authorized Representative" and "Registrant/Owner" who is Defendant Christensen.

37)    Defendant Christensen is the sole owner and operator of Defendant PHEBP.

38)    Defendant Christensen operates her salon, Portland Hair Extensions by Penelope, at 1251 NW 19th Avenue, #101, Portland, OR 97209, through the *"B-Love"* salon, registered in Oregon as *"B-Love LLC"* with principal place of business at 1251 NW 19th Avenue, Portland, OR 97209, which is six (6) blocks away from PDX Hair Extensions located at 1801 NW Upshur St., Portland, OR 97209.

## JURISDICTION AND VENUE

39)    This Court has subject matter jurisdiction under 15 USC § 1121, and under 28 USC §§

1331 and 1338. Subject matter jurisdiction over Plaintiff's related state and common law claims

are proper pursuant to 28 USC §§ 1338 and 1367.

40)    This Court has personal jurisdiction over Defendants because: (a) Defendants have and

are using, displaying, advertising, and marketing to persons using Plaintiff's Service Mark *"Pdx*

*hair extensions"* within the State of Oregon; (b) Defendants regularly transact and conduct

business within the State of Oregon; and (c) Defendants have otherwise made or established

contacts within the State of Oregon sufficient to permit the exercise of personal jurisdiction.

41)    The District of Oregon is a proper venue pursuant to 28 USC § 1391(b)(2) because a

substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this District.

## PLAINTIFF'S DEMAND LETTER TO DEFENDANTS

42)    Plaintiff sent a demand letter to Defendants on January 4, 2023 ("Demand Letter") for

Defendants to cease and desist use of Plaintiff's Service Mark *"PDX Hair Extensions."* (Decl.

¶7, 13, 35; **Exhibit P**).

43)    Plaintiff advised Defendant Christensen in the Demand Letter that she would be filing a

lawsuit and seeking an injunction, unless Defendants ceased use of the name, and that

Christensen was/is aware that Plaintiff's owns the trademark of PDX Hair Extensions and

business name.  (**Exhibit P**.)

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

**PLAINTIFF'S REGISTERED SERVICE MARK *"PDX HAIR EXTENSIONS"***

44)     Kimberly Schoene is the owner of a federal trademark registration, Reg. No. 6,430,216,
issued by the United States Patent and Trademark Office ("PTO") on July 20, 2021, for the mark
***"Pdx hair extensions"*** ("Plaintiff's Service Mark" or the "Mark"). (See Decl. ¶15-17, 69-74;
Certificate of Registration is attached to the Declaration in Support as **Exhibit A**).

45)     Plaintiff's Service Mark is for: *"Hair salon services, namely, hair cutting, styling,
coloring, and hair extension services; Hairdressing services."* (*Id.*)

46)     The registration certificate states: *"No claim is made to the exclusive right to use the
following apart from the mark as shown: 'HAIR EXTENSIONS.'"* (*Id.*)

47)     Plaintiff's Service Mark *"Pdx hair extensions"* first use was February 2, 2016, and first
use in commerce was February 2, 2017. (*Id.*)

48)     On April 9, 2020, Kimberly Schoene filed to have the service mark *"Pdx hair
extensions"* trademarked with the USPTO. (*Id.*)

49)     Plaintiff Schoene has continuously advertised and marketed under the name *"PDX Hair
Extensions"* from at least February 2, 2017 until current, and has continuously and actively
operated her salon under the business name ***"PDX Hair Extensions"*** from September 5, 2018
until current. (See *Id.*; see also **Exhibit B** and Oregon business registrations.)

50)     Plaintiff has the exclusive right to use Plaintiff's Service Mark *"Pdx hair extensions,"* as
the three (3) words used in the service mark, in sequential order "Pdx hair extensions" (the first
word being *"Pdx"* followed by *"hair"* followed by *"extensions"* used together, in sequence).

## PLAINTIFF'S REGISTERED BUSINESS *"PDX HAIR EXTENSIONS"*

51)     On September 5, 2018, Plaintiff Schoene registered the business name *"PDX Hair Extensions"* located at 916 SW King, Portland, OR 97205 with the Oregon Secretary of State, Corporations Division, business registry No. 1473910-98.  (Decl. ¶75.)

52)     PDX Hair Extensions conducted business at 916 SW King, Portland, OR 97205, in Multnomah County, Oregon, from September 5, 2018 until July, 2020.  (Decl. ¶76.)

53)     In October, 2020, Plaintiff Kimberly Schoene opened her salon at 1801 NW Upshur, under the name of *"PDX Hair Extensions"* and has continuously conducted business at 1801 NW Upshur, Portland, OR 97201, in Multnomah County, Oregon, from October, 2020 until current (Decl. ¶77-78).

54)     On November 16, 2020, Plaintiff Schoene registered the business name *"PDX Hair Extensions"* located at 1801 NW Upshur, with the Oregon Secretary of State, Corporations Division, business registry No. 1743793.  (Decl. ¶79.)

55)     The location of Plaintiff Schoene's salon named and doing business as *"PDX Hair Extensions"* in the "Pearl District" of Portland is critical to the genre of clientele of the Portland hair extension consumer market.  Being in the "Pearl District" is an enhancement in Plaintiff Schoene's advertising for PDX Hair Extensions.  (Decl. ¶80.)

56)     Plaintiff has continuously conducted her hair extensions' salon and business under the registered name of "PDX Hair Extensions" since at least September 5, 2018.

57)     Plaintiff has good cause to believe that Defendants intentionally selected a location as close to Plaintiff's location as possible, in order to confuse consumers when they do searches on map websites.  (Decl. ¶81; see maps as **Exhibits B-17, E-2, K-1;** see also Statement of Misti Harding, **Ex. M-8.**)

### PLAINTIFF'S USE OF *"PDX HAIR EXTENSIONS"* IN COMMERCE

58)    Since at least February 2, 2017, Kimberly Schoene has extensively and continuously used and promoted PDX Hair Extensions, primarily through the website for PDX Hair Extensions, located online at https://www.pdxhairextensions.com. (Decl. ¶18, 86-87; **Exhibits B, C, J**).

59)    In 2016, Plaintiff launched the website for PDX Hair Extensions, and has extensively and continuously used and promoted PDX Hair Extensions at https://www.pdxhairextensions.com, as well as other online sources (such as YouTube, Ex. J-4). (Decl. ¶86.)

60)    Kimberly Schoene has spent tens of thousands of dollars promoting the PDX Hair Extensions in online marketing, paying companies to market her salon *"PDX Hair Extensions"* and her name *"Kim Schoene"* or *"Kimberly Schoene"* (Decl. ¶88; **Exhibits B, C, J**).

61)    As a result of Kimberly Schoene's continuous and exclusive use of the service mark *"Pdx hair extensions"* in connection with its service, the mark *"Pdx hair extensions"* has gained a reputation as "the best in hair extensions in Portland," and has gained the public acceptance and association of the hair salon *"PDX Hair Extensions"* with Plaintiff Kimberly Schoene, and has come to be recognized in the Portland area hair extensions market, and favorably by the public, as an indicator of the origin of Kimberly Schoene's services provided through PDX Hair Extensions. (Decl. ¶89; **Exhibit C-2, F-1, M-8**.)

62)    As a result of Kimberly Schoene's extensive use and promotion of the mark *"Pdx hair extensions,"* Kimberly Schoene has built up and now owns an extremely valuable reputation in the Portland-area that is symbolized by the mark. The purchasing public has come to associate PDX Hair Extensions exclusively with Kimberly Schoene. (Decl. ¶90; **Exs. B, C, F-1, J**.)

63)    Plaintiff's trademarked service mark *"Pdx hair extensions"* has been "in use" since February 2, 2016, and "in commerce" since February 2, 2017, continuously and actively, through

online advertising, videos and other marketing, to promote the name *"Pdx hair extensions,"* and through use of the registered business name of Plaintiff's salon, *"PDX Hair Extensions."* (Decl. ¶16, 41, 73; **Exs. B, J.**)

64)     From as early as 2015 to current, and at least by February 2, 2017, Plaintiff has used a variety of marketing materials that use and display the Service Mark *"Pdx hair extensions"* to encourage name recognition and increased sales, with the name *"Pdx hair extensions"* printed in the marketing item (for items such as cloth shopping bags, pens, mugs, shirts, etc.). (Decl. ¶82.)

65)     Plaintiff has a logo that is distinctive and recognized by the pink coloring in logo's portrayal of hair extensions. The color pink identifies both Plaintiff and PDX Hair Extensions. (Decl. ¶44; **Exhibits B, J.**)

66)     Plaintiff's name *"Pdx hair extensions"* (through her salon PDX Hair Extensions) is distinctive, identified and known by the public by the following distinctions:

   a)  The trademarked name of Plaintiff's salon *"PDX Hair Extensions,"* and/or

   b)  Plaintiff's own name *"Kimberly Schoene"* or *"Kim Schoene,"* and/or

   c)  Plaintiff's own pink hair and her hair extensions. (See Decl. ¶83; **Exhibits B, J.**)

67)     *"PDX Hair Extensions"* is known in the public, through word of mouth, or client reviews, as a top provider of hair extension services in Portland (Decl. ¶84; **Exs. C, M, N**).

68)     The trademark's capacity for identifying and distinguishing Plaintiff's service, available only at PDX Hair Extensions, is what attracts the consumer, as her hair extension service is unique and outstanding above others (in particular, far above the poor-quality hair extension services provided by Defendant Christensen, who came to Plaintiff to fix the terrible job done by Christensen - see Witness statements by Megan Diesing and Stephanie Filipelli; Decl. ¶85; **Exs. M and N**).

**DEFENDANTS' USE OF PLAINTIFF'S SERVICE MARK "PDX HAIR EXTENSIONS"
IN COMMERCE CAUSING CONFUSION WITH CONSUMERS**

69)     Defendant Christensen has been using Plaintiff's trademarked service name of *"Pdx hair extensions,"* to intentionally cause confusion to the consuming public, as if she is Plaintiff or Plaintiff's salon.  (See Decl. ¶112-113; **Exhibits D-L**; **Exhibit M**.)

70)     Defendant Christensen has used the business name *"PDX Hair Extensions"* as her own business name, in online advertising, and as search term identifiers, as if Defendants' salon is named *"PDX Hair Extensions."*  (*Id.*)

71)     Defendants are using Plaintiff's Service Mark *"Pdx hair extensions"* as the three (3) words used in the registered service mark, in sequential order, in violation Plaintiff's rights and protection under state and federal trademark laws.  (Decl. ¶21, 48, 51, 64-65, 93, 114; **Exs. D-L.**)

72)     Christensen has used, displayed, advertised and marketed using the three sequential words *"PDX Hair Extensions,"* in the following online media sources (see Decl. ¶21-30 , ¶114):

    a)  **Google:** searching the three-word term *"PDX Hair Extensions"* produces an "Ad" at the top of the page for "Portland Hair Extensions by Penelope" website with the link to her own website in the advertisement – see **Exhibits D & E.**

        i.   Different electronic means of searching produces different search results – when searching on a laptop computer on Windows format brings up a different result then search on an Android phone or on an Apple phone (and depending on the browser used) – compare **Exhibits D, E and F.**

        ii.  Different search engines provide different results, because of the use of a "search term identifier" used by Defendants to confuse the public and prospective clients, by using the terms – see **Exhibits D, E and F.**

b) **Facebook as Penelope Christensen:** Defendant Christensen posted as recently as March 22, 2023 the search term identifier *"#pdxhairextensions"* – that was still available as of April 15, 2023 – see **Exhibit G**.

    i. On Facebook: clicking on the link on Defendant Christensen's posting *"#pdxhairextensions"* directs the consumer to Defendants' website *Portland Hair Extensions by Penelope* – see **Exhibits G & H**.

c) **Facebook as *"ploinportland"*:** Defendants posted as recently as April 12, 2023 the search term identifier *"#pdxhairextensions"* (**Exhibit H-2**). From January 10, 2023 to April 12, 2023 (92 days), Defendants have used the search term identifier *"#pdxhairextensions"* on this page alone, at least 21 times, on the following dates (see **Exhibit H-2 to H-22**):

    i. April 12, 2023;
    ii. April 7, 2023;
    iii. March 30, 2023;
    iv. March 26, 2023;
    v. March25, 2023;
    vi. March22, 2023;
    vii. March 8, 2023;
    viii. February 27, 2023;
    ix. February 25, 2023;
    x. February 22, 2023;
    xi. February 15, 2023;
    xii. February 15, 2023 (twice);
    xiii. February 11, 2023;
    xiv. February 6, 2023;
    xv. February 5, 2023;
    xvi. January 28, 2023;
    xvii. January 27, 2023;
    xviii. January 21, 2023;
    xix. January 18, 2023; and
    xx. January 10, 2023.

d) **Instagram**: Defendants use the search term identifier *"#pdxhairextensions"* – see **Exhibit I**.

e) **YouTube:** searching the three-word term *"PDX Hair Extensions"* gives an "Ad" at the top of the selection menu for *"Pdx Hair extensions Penelope,"* having the three (3) words *"Pdx hair extensions"* in sequential order that are Plaintiff's trademarked service mark – see **Exhibit J-1**.

      i. On YouTube, clicking the *"Pdx hair extensions"* link takes the consumer to the website for *Portland Hair Extensions by Penelope*.

      ii. On the YouTube ad, it states: *"Pdx hair extensions"* in the description of the services provided. (See **Exhibit J-1**.)

f) **Real Yellow Pages:** Defendants use the search term identifier *"Pdx hair extensions"* – see **Exhibit K**.

g) **LinkedIn:** Christensen states she is an *"extension specialist at Pdx hairextensions"* and has an icon for *"Pdx hairextensions"* on the webpage. See **Exhibit L**.

h) **Online Maps:** Searches on map engines seeking "PDX Hair Extensions" misdirects the consumer to either the location of Defendants' salon (near Plaintiff's salon in NW Portland), and/or directs the consumer to the phone number of Defendants, and then gives the map location for Defendants when clicking on the phone number. (See **Exhibits B-17, E-2, K-1**.)

## DEFENDANT CHRISTENSEN'S DECEPTION ABOUT BEING A PARTNER OF PLAINTIFF AND/OR PART-OWNER OF PDX HAIR EXTENSIONS

73) After Defendant Christensen left PDX Hair Extensions, she sent emails and text messages to clients of PDX Hair Extensions, claiming she was a business partner of Kimberly Schoene and/or part-owner of PDX Hair Extensions, when she was not a partner or part-owner of PDX Hair Extensions. (Decl. ¶115.)

## DEFENDANTS' COUNTERFEITING PLAINTIFF'S SERVICE MARK

74)    Defendants have counterfeited Plaintiff's Service Mark by using the <u>identical three (3)</u> <u>words</u>, <u>in the same sequential order</u>, as Plaintiff's Service Mark: ***"Pdx hair extensions."***

75)    The use of the three (3) words with or without a space, and whether uppercase or lowercase is nonconsequential, as the three (3) words used together in sequential order is what Plaintiff's owns and has the trademark protections rights and remedies.

76)    Defendant's use is identical to or substantially indistinguishable as Plaintiff's Service Mark *"Pdx hair extensions"* and it is used on or in connection with the same type of services for which the genuine mark is registered, for hair extensions.  (Decl. ¶6, 48.)

## DEFENDANTS' USE IS DILUTING THE QUALITY AND STRENGTH OF PLAINTIFF'S SERVICE MARK IN THE PORTLAND HAIR EXTENSIONS MARKET

77)    Plaintiff's reputation is very highly regarded in the Portland-area hair extension industry. (Decl. ¶92-102; see also ¶11, 41, 121, 133.)

78)    Plaintiff and Defendants are in direct competition for sales in the Portland area for providing hair extensions' services and products.  (Decl. ¶55, 56, 62, 124.)

79)    There are over 50 Portland-area hair salons that provide hair extension services, but few that provide high-quality products and services such as Plaintiff does.  The market for consumers desiring high-quality hair extension products and service is limited to those who can afford the costly extensions, primarily for women with additional income.  Therefore, the prospective customer base in Portland is relatively small which results in more fierce competition based on the relatively low demand for high-quality hair extensions services and products that can range in price from $800 up to $10,000.  (Decl. ¶56.)

80)     Defendants have duplicated, imitated or closely used Plaintiff's Service Mark without Plaintiff's consent or authorization, against Plaintiff's will, and has continued to use the Mark after Plaintiff gave notice to Defendants to cease and desist the use of the Mark *"Pdx hair extensions"* in any form.  (Decl. ¶65.)

81)     Defendants' use in copying the same three (3) words in the same sequence in their online marketing, easily confuses consumers to think they are making an appointment with the real PDX Hair Extensions owned by Plaintiff, or had made an appointment and trying to locate the salon of Plaintiff were additionally confused by the use of Defendants' search term(s), as well as the confusion on maps when consumers have tried to locate Plaintiff's salon and were directed to Defendants' salon (Decl. ¶93; **Exhibit M-8;** *see also* **Exs. B-17, E-2, K-1).**

82)     Defendant Christensen has intentionally tried to make herself appear to be PDX Hair Extensions, or affiliated with PDX Hair Extensions, piggy-backing on the accolades and reputation of Kimberly Schoene and PDX Hair Extensions as the "best in Portland" for hair extensions.  (Decl. ¶45, 47, 89, 121, 123; **Exhibit F-1, M-8**.)

83)     Defendant Christensen falsely represents to consumers that she still works for Plaintiff and PDX Hair Extensions, or is affiliated with Plaintiff and PDX Hair Extensions, which further dilutes Plaintiff's Service Mark *"Pdx hair extensions"* and the business name of PDX Hair Extensions.  (Decl. ¶63, 116.)

84)     The false-affiliation deception by Defendants damages Plaintiff financially and Plaintiff's reputation because Penelope Christensen does not do top quality work as does Plaintiff.  (Decl. ¶119.)

85)    Defendant Christensen's hair extensions' work is very poor (see Witness Statements

below, and **Exhibit M**).  In fact, Penelope Christensen's work is so shoddy that Plaintiff

Kimberly Schoene has had to fix hair extensions' work done by Christensen, repeatedly (Decl.

¶32, 33, 50, 85; see also **Exhibit N** for photos of work done by Christensen that Plaintiff had to

fix for Stephanie Filipelli; Filipelli's statement is at **Exhibit M-9 to M-13**.)

86)    By Christensen telling others she is affiliated with Plaintiff, it tarnishes Plaintiff's highly-

regarded reputation in the hair extension service industry in the Portland area.  (Decl. ¶14, 66,

116, 120.)

87)    Defendant Christensen has made false and defamatory statements about Plaintiff

Kimberly Schoene to several consumers who advised Plaintiff of the statements made by

Christensen, purposefully trying to defame Plaintiff and the resulting dilution of Plaintiff's

Service Mark.  (Decl. ¶10, 117.)

88)    The location of Defendant PHEBP causes confusion when clients try to locate Plaintiff's

salon of PDX Hair Extensions, as the two are in very close proximity and consumers have

mistaken the "PDX Hair Extensions" choice on their menu options of the place to drive to the

salon with Portland Hair Extensions by Penelope due to the proximity of locations.  (Decl. ¶11,

59, 80, 93, 114(h), 118; see **Exhibits B-17, E-2, K-1**.)

89)    Defendants have knowingly, intentionally and willfully intended to cause dilution of

Plaintiff's Service Mark, in order to try and harm Plaintiff's business and Plaintiff personally.

(Decl. ¶120.)

## PLAINTIFF'S RELIANCE ON TOP-QUALITY REPUTATION

90)     The reputation of Plaintiff and PDX Hair Extensions is very highly regarded in the Portland-area hair extension industry.

91)     Plaintiff Kimberly Schoene is well known in the Portland area, and advertises on her own website using the accolades she has achieved, testimonials about her top-quality service, her friendly and positive attitude, and photos or videos of the before/after service provided by PDX Hair Extensions.  (Decl. ¶92-102; **Ex. B, J**.)

92)     Kimberly Schoene is known by her the brand name of the business and Service Mark *"PDX Hair Extensions"* because that has been the name of her salon since September 2018, and she advertises under the name *"PDX Hair Extensions"* and has built the brand recognition over the last 4-1/2 years, and her name recognition and reputation over the last 20+ years.

93)     Kimberly Schoene is well known as "the best in Portland" for hair extensions, given the following examples:

   a)   YELP has PDX Hair Extensions, and photograph of Kimberly Schoene, as #1 in
        Portland (see **Exhibit C**);

   b)   Vagaro has a 5/5 rating for PDX Hair Extensions (see Google **Exhibit F-1**.)

   c)   Testimonials praising the services of Kimberly Schoene and PDX Hair Extensions
        on Yelp, Vagaro, as well as Plaintiff's website, pdxhairextensions.com (see website
        for "client comments" page; see Witness Statements, **Exhibit M**.)

## PLAINTIFF KIMBERLY SCHOENE – SUCESSFUL BUSINESS OWNER

94)     Plaintiff Schoene was born and raised in the Portland area, attended all her schooling in the Portland-area, graduating from a Portland area high school and beauty school from Beaumont Beauty School in Portland. (Decl. ¶98.)

95)     Plaintiff Schoene has owned and operated the Salon since 1999 under various names and locations in the Portland area.

96)     Plaintiff Schoene has independently established her salons, including PDX Hair Extensions, through her hard work, diligence, perseverance through difficult times.

97)     In 1999, Plaintiff Schoene started her first salon by getting a loan of $14,000 from Wells Fargo Bank, in which her parents had to co-sign.  She paid back the loan by 2001.  (Decl. ¶39.)

98)     Plaintiff Schoene has employed up to 25 employees or independent contractors at the same time, and over 50 employees as a business owner over the years, performing all business administrative duties, ordering supplies, etc. for her salons. (Decl. ¶107-108.)

99)     Over the past 25 years, Plaintiff Schoene has built up a large and loyal clientele, and is well known and highly established in the hair salon industry in Portland, appearing on television and in magazines, and working with celebrity clientele.  (Decl. ¶103.)

100)    Plaintiff's online marketing and videos for hair tutorials also builds the number of prospective customers in the geographic area of the prospective customers, primarily in the Portland area, but from other states and even Canada.  (Decl. ¶42, 81; **Ex. B, J.**)

101)    Plaintiff always has satisfied customers, because she is reliable and essentially guarantees her product and service.  If someone is not pleased, she will fix it, usually for free.  (Decl. ¶97.)

102)    Plaintiff's clients know that Plaintiff Schoene is "here to stay" in Portland, adding a level of trust and security that Kimberly Schoene and PDX Hair Extensions will be around to help

them if necessary, or for their next service and/or purchase of products they know are reliable, safe, and guaranteed because Plaintiff Schoene has been in business for so long in Portland, has lived her entire life in the Portland area, her parents are here and she cares for them, and is likely the most established hair extensions provider in the Portland area. (Decl. ¶99.)

103)    Most of Plaintiff Schoene's clientele are upper-income women who prefer to use Plaintiff Schoene's services because of Plaintiff Schoene's expertise and professionalism, as well as the physical salon itself, including the location, privacy and aesthetics of the salon. (Decl. ¶100.)

104)    Plaintiff Schoene can earn up to $5,000 in one day (gross), and about $25,000 per week. However, she puts most of the business proceeds back into the business and her non-profit, purchasing inventory, supplies, marketing, paying staff, paying business bills. (Decl. ¶105.)

105)    Plaintiff Schoene's businesses have consistently yielded profits. (Decl. ¶105.)

## PLAINTIFF KIMBERLY SCHOENE – EXPERT HAIR DRESSER AND PUBLICLY KNOWN AS THE "BEST IN PORTLAND" FOR HAIR EXTENSIONS

106)    Plaintiff has owned and operated a successful hair salon since 1999 at various locations in the Portland area, under various names including (Decl. 102).:

a)    *"Kalista Hair Salon"* at 116 NE 28th Ave., Portland, OR 97232 from April 24, 2002 to April 25, 2006, business registry No. 067549-98;

b)    *"Kalista Salon & Spa"* at 116 NE 28th Ave., Portland, OR 97232 from April 28, 2004 to April 29, 2006, business registry No. 208847-97;

c)    *"Hey Beautiful"* at 116 NE 28th Ave., Portland, OR 97232 from May 7, 2002 to May 8, 2006, business registry No. 080245-98;

d)    *"Hey Beautiful Enterprises, Ltd"* at 822 NW 23rd, Portland, OR 97209 from August 29, 2007 to November 4, 2015, business registry No. 460301-39;

e)    ***"PDX Hair Extensions"*** – see above, from 2016 (unofficially), and officially since September 5, 2018 to current. (See Oregon Secretary of State business filings.)

107)    Consumers in the Portland-area hair extensions market recognize Plaintiff Schoene and her top-quality services:

    a)  By her name, Kimberly Schoene; or

    b)  By her brand name, PDX Hair Extensions; or

    c)  By her personal appearance and primarily pink hair.  (Decl. ¶83; **Ex. B; Ex. J**.)

108)    Plaintiff currently has around 150 active clients, and another 175 semi-active clients. (Decl. ¶104.)

### PLAINTIFF'S MARK IS "FAMOUS" IN THE HAIR EXTENSIONS' MARKET FOR THE PORTLAND AREA CONSUMING PUBLIC

109)    Plaintiff's mark is *famous* in the hair extensions' market for the consuming public in the Portland-area region, and is recognized as a Mark with distinction, and the designation of the source of Kimberly Schoene's and PDX Hair Extensions' hair extension services.  (See Declaration generally, and Exhibit B and C; Decl. ¶92-102.)

110)    Factors that evidence Plaintiff's Service Mark is famous, include the following:

    a)  The duration, extent and geographic reach of advertising and publicity of the mark in this state by the owner or by other persons: Plaintiff's advertising reaches anyone who searches for hair extensions services to be performed in the Portland-area;

    b)  The amount, volume and geographic extent of sales of goods or services offered under the mark in this state: Plaintiff's volume, for the number of hair dressers she works with is high, and the geographic extent reaches to the entire state of Oregon, parts of Washington, Idaho and Canada;

    c)  The extent to which the mark is actually recognized in this state: Plaintiff's Mark is recognized as "the best in Portland" for hair extension services; and

    d)  Plaintiff's mark is registered and appears on the USPTO register (**Exhibit A**).

## HAIR EXTENSIONS' INDUSTRY & MARKETING IN THE PORTLAND-AREA

111)    **"The Best in Portland":** PDX Hair Extensions is known as "The Best in Portland" for multiple reasons.  PDX Hair Extensions is the only salon with a variety of hair textures, lengths, styles and colors.  A consumer can get hair extensions with PDX Hair Extensions the same day as a consultation.  PDX Hair Extensions is also known as the best due to the reputation of founder/owner Kimberly Schoene, and the techniques used, her master-level experience in coloring and overall expertise in the hair extensions' industry.  (Decl. ¶121; **Ex. B.**)

112)    **Trade Secrets:** Kimberly Schoene has developed trade secrets she uses in the building of PDX Hair Extensions, based on the quality of her service and the quality and variety of the products carried by PDX Hair Extensions, which gives PDX Hair Extensions the competitive advantage in the Portland area hair extensions' market.  (Decl. ¶122; **Ex. B.**)

113)    **Hair Marketing:** Marketing for the hair extension consumer in the Portland area is fierce, as there are many hair salons, but only a few that truly offer "top-end" hair extension services and products such as PDX Hair Extensions.  That is why Christensen has piggy-backed on the name of "PDX Hair Extensions" because of the name recognition as top-quality service and top-quality products, in stock, and consistent and reasonable pricing.  (Decl. ¶123; **Ex. B.**)

114)    **Competition in Portland:** The competition in the Portland hair extensions market is tight as the number of consumers of top-end hair extensions is limited to those women (mostly) with income sufficient to pay from $800 to $10,000 for hair extensions.  PDX Hair Extensions is a recognized brand, and why Defendants are mimicking the name in their advertisements. (Decl. ¶124; **Ex. B.**)

115)    **Pricing:** PDX Hair Extensions' pricing remains consistent, and does not fluctuate rapidly as do competitors.  PDX Hair Extensions does not have any additional fees for certain

items that PDX Hair Extensions includes in its base price, whereas some competitors in the Portland area, including Defendants, do charge additional and "hidden" fees. Further, PDX Hair Extensions does not charge any consultation fees, while others in Portland do charge consultation fees. (Decl. ¶125; **Ex. B**; see also witness statement, **Ex. M**.)

116)  **Materials:** Kimberly Schoene sources the hair extensions purchased exclusively from Europe, and has been loyal to the same manufacturer for 15 years. She requests the color(s), texture(s), and length(s) of each new design of color. The expectations from Schoene's distributor are that the hair purchased: (a) never has touched the ground when cut; (b) originally uncolored hair must be healthy hair; (c) the hair strands have consistent thickness on both ends; (d) the hair's longevity is consistent; (e) the hair must be 20" minimum. Other hair extension providers in the Portland area, to Plaintiff's knowledge, purchase the middle-grade human hair to install on clients, use 16" lengths, and charge for additional lengths. (Decl. ¶126; **Ex. B**.)

117)  **Hair Products and Language:** Kimberly Schoene has learned the products and "language" of hair, and hair extensions, which includes selection and ordering of quality hair, mixing of hair colors in the custom-ordered extensions, inventory of hair colors and varieties, as well as the variety of attachment techniques and products used (Decl. ¶127; **Ex. B**.):

    a)  **Top quality hair purchased**: Hair extensions are not just "good or bad" but are rated or graded on a scale from 5A, 6A, 7A, 8A to the higher levels of 9A, 10A, 11A or "virgin hair." Better hair has a higher rating or grade. Ratings are based on factors such as the hair's origin, thickness, fullness, and longevity.

    b)  **Colors:** PDX Hair Extensions carries the complete variety of hair coloring(s), to match the clients' existing hair or to color the existing hair to match the hair extensions. Hair colors are mixed, and Kimberly Schoene understands how and what to order through her distributor for the large variety of colors that PDX Hair Extensions has.

    c)  **Hair Extensions add-in products:** PDX Hair Extensions uses the top quality and organic cruelty-free products for coloring, in the texture/feel of the hair, and adding longevity to the hair extensions.

118)    **Color Matching:** PDX Hair Extensions uses a "numbers" method in ordering the hair and specific coloring(s), to meet the client's desire, while others install a particular "standard" color of hair one day, then another day will color the hair.  PDX Hair Extensions has such a large inventory that color matching is inherent in the colors of hair available, and no "modifications" to the hair extensions are necessary – and the hair extensions do not lose their color, as with "color matching" the colors will fade over time.  PDX Hair Extensions does exact matches for clients.  (Decl. ¶128; **Ex. B.**)

119)    **Attachments:** PDX Hair Extensions does all the different techniques of attaching of the hair extensions, and has mastered the skills necessary.  Only the top-quality attachment products are used (see above for types of attachments).  Plaintiff understands the variety of attachment techniques and what suits the client the best at the particular price range.  (Decl. ¶129; **Ex. B.**)

120)    **Inventory:** PDX Hair Extensions relies on the quality of the service and products, as well as the quantity of hair extension bundles, colors, lengths, thickness and other specific types of differing hair extension bundles.  PDX Hair Extensions has a large inventory of styles of hair extensions to offer to prospective consumers, so the client can "walk-in" without having to pre-order specific hair color(s) or lengths, or thickness, etc.  (Decl. ¶130; **Ex. B.**):

121)    **Physical Space Amenity of PDX Hair Extensions:** PDX Hair Extensions is located in a (converted) warehouse, and has ample space for the large inventory of hair products, colorings, etc.  PDX Hair Extensions also has enough space for clients to relax and enjoy the aesthetics of the salon's interior decoration and calming atmosphere.  (Decl. ¶131; **Ex. B.**)

## STATEMENTS OF WITNESSES

122)    Attached to the Declaration in Support are statements from following individuals, with

their statements provided below their name (see Decl. ¶132-133; **Exhibit M**).

123)    **Statement of Naomi Rowe**, October 9, 2021:

> "I, Naomi Rowe, witnessed Penny [Defendant Christensen] admitting to Kim
> [Plaintiff] that she [Defendant Christensen] was stealing from her [Plaintiff] salon.  As
> she walked out with a duffle bag."  (**Exhibit M-1.**)

124)    Ms. Rowe witnessed theft by Christensen of goods from Plaintiff's salon.

125)    **Statement of Megan Diesing**, November 23, 2022:

> "1) On August 24, 2022 I had hair extensions done by Penelope Portland Hair Extensions
> of "Portland Hair Extensions by Penelope.
>
> "2) Penelope's salon came up on the search on Google when searched "pdx hair
> extensions" and I contacted this salon to do my extensions.  This salon I contacted said
> they have pink hair in stock.  The website said the hair extensions are $1,200.
>
> "3) When I went to the appointment, Penelope Christiansen (or "Penny") was there, and
> she put pink hair extensions on me.
>
> "4) This was the first time I had met Penelope Christiansen.
>
> "5) Penny did a terrible job.  The extensions began falling out almost immediately.
>
> "6) I contacted Penelope about this and she made the excuse that my natural hair had a
> "silicon like feeling" which is not true.
>
> "7) When I was sitting in the salon chair, Penelope talked bad about Kim Schoene and
> PDX Hair Extensions, and that Kim is racist because loves Trump.  She said "I feel sorry
> for Amie having to work under Kim."
>
> "8) I paid $2,400 for the combined cost of the hair, coloring, and the service she provided
> to attach the hair extensions.
>
> "9) I was completely disappointed in the job done by Penelope Christensen and Portland
> Hair Extensions by Penelope.  I repeatedly contacted Penelope to fix the hair extensions
> that I had paid $2,400, but Penelope ignored me.
>
> "10) I had to get my done properly, so I went to PDX Hair Extensions on November 23,
> 2022, and had my hair extensions removed and re-done by Amie Terry of PDX Hair
> Extensions.
>
> "11) I previously have had my extensions done by Amie Terry and PDX Hair Extensions,
> and know they do a good job.
>
> "12) I walked into PDX Hair Extensions' salon holding a handful of pink hair that had
> come out.  This hair was from the pink hair extensions done by Penelope Christiansen

that had fallen out.

"13) Amie Terry removed the remaining pink hair extensions I got at Portland Hair Extensions by Penelope, and kept the hair.

"14) Kim Schoene was at PDX Hair Extensions also, and she recognized the pink hair that Amie had removed as the same pink hair she purchased previously – because Kim has pink hair extensions, and it looked like the exact same hair that Kim has for pink hair extensions.

"15) Kim told me the pink hair extensions that Penelope attached are the exact same hair that Kim purchased.

"16) While sitting in the salon chair at PDX Hair Extensions, I told Amie Terry and Kim Schoene that Penelope Christiansen had bad-mouthed Kim to me.

"17) Kim asked if I would sign a statement about what happened if she had it typed up (which is this Statement).

"18) As these things have just occurred, this Statement is an accurate representation of the events that transpired, and the words spoken to me by Penelope Christiansen.

"19) Neither Amie nor Kim offered me anything for what I told them, or for signing this Statement.

"20) I am willing to testify in court as to these events."  (**Exhibit M-2 to M-3.**)

126)    Ms. Diesing's Statement evidences the following:

a)    Christensen was using serious deception to fool Ms. Diesing as to the affiliation with PDX Hair Extensions, that Christensen had installed pink hair extensions that were (likely) stolen by Christensen from Plaintiff's salon.  Plaintiff knows this because the hair extensions are made from the same exact same process Plaintiff uses in the pink color, the style, quality of the hair, the deterioration over time of the hair – all that Plaintiff can recognize because she "creates" these hair extension products (see "Hair Extension Industry" below; see also Statement of Amie Terry and photographs at **Ex. M-5 to M-7** and Statement of Stephanie Filipelli at **Ex. M-9-13** and photos at **Ex. N-1 to N-2** for Christensen's work and **Ex. N-3 to N-4** for Plaintiff's work).

b)    Ms. Diesing was confused due to the intentional confusion created by Defendants' illegal use of Plaintiff's Service Mark "PDX Hair Extensions."

c)    Ms. Diesing was so confused she unintentionally made an appointment with the wrong salon (Defendants' salon).

d)    Diesing heard slanderous statements made by Defendant Christensen about Plaintiff.

e)    Diesing's statements to Kimberly Schoene alerted Schoene as to the continual and expanded trademark violations by Defendants, as well as evidence of theft of the pink hair stolen from her salon by Christensen, defamation, and other legal violations by Defendants, leading to Plaintiff sending the Demand Letter on January 4, 2023.

127)    Second Statement of Megan Diesing, April 27, 2023:

> 1)  This is the second statement I am making concerning hair extensions and what happened with Penelope Christensen and PDX Hair Extensions and Amie Terry (who works for PDX Hair Extensions).
> 2)  As I stated in my first statement, I was confused as to "pdx hair extensions" when I searched in the Internet, and I selected the one that appeared to be "pdx hair extensions."
> 3)  As I stated in my first statement, the hair extensions' work done by Penelope Christensen was terrible, as the hair was falling out and I went back to her to have her fix it, but the hair continued to fall out.
> 4)  As I stated in my first statement, I had to get my hair extensions done properly, so I went to PDX Hair Extensions on November 23, 2022, and had my hair extensions removed and re-done by Amie Terry of PDX Hair Extensions.
> 5)  As I stated in my first statement, I previously have had my extensions done by Amie Terry and PDX Hair Extensions, and know they do a good job.
> 6)  I was very satisfied with the job done by Amie Terry at PDX Hair Extensions on November 23, 2022, the date I signed the first statement.
> 7)  Since November 23, 2022, I have gone back to PDX Hair Extensions three (3) times, including today, April 27, 2023, for maintenance of my hair extensions.
> 8)  I am satisfied with the service, the hair product and the pricing of PDX Hair Extensions, and was very unsatisfied with the work done by Penelope Christensen of "Portland Hair Extensions by Penelope" and why I had to have the shoddy work of Penelope Christensen fixed by Amie at PDX Hair Extensions.
> 9)  I am willing to testify in court as to these events.  (Exhibit M-15.)

128)    **Statement of Amie Michelle Terry**, November 23, 2022:

> "1) I work at the hair salon owned by Kimberly Schoene known as 'PDX Hair Extensions.'  I have worked with Kim off and on over the last 20 years or so.
>
> "2) I had previously done hair extensions for Megan Diesing while working for Kimberly Schoene.
>
> "3) On November 23, 2022, Megan Diesing came to PDX Hair Extensions, holding a handful of pink hair extensions.
>
> "4) Megan told me that she had hair extensions done by Penelope Christiansen at Penelope's salon, the hair extensions were not attached properly and most had fallen out.
>
> "5) I know Penelope, and she used to work at PDX Hair Extensions.
>
> "6) I took photographs of Megan's hair, and the hair extensions that had fallen out.

Those photographs are attached to this Statement as Exhibit 1, 2 and 3.

"7) Some of the hair extensions were still attached to her own hair (see Exhibit 1 and 2).

"8) I removed all the remaining pink hair extensions and placed them aside, as shown in the attached Exhibit 3.

"9) I recognize the pink hair extensions I removed from Megan's hair, and the pink hair she carried into the salon in her hand, as the same pink hair that Kimberly Schoene wears and purchased, which is high-quality hair and the particular style Kim stored in her 'London's Lox' supply of hair that we use for the customers at PDX Hair Extensions.

"10) Megan said during the appointment that Penelope Christiansen had been bad-mouthing Kim, and that Penelope said to Megan: 'I feel sorry for Amie having to work under Kim.'

"11) Kim asked if I would sign a statement about what happened if she had it typed up (which is this Statement).

"12) I am willing to testify in court as to these events." **(Exhibit M-4 to M-7.)**

129)    Ms. Terry's Statement confirms what Ms. Diesing stated about the pink hair and poor service by Defendants, as well as that the hair was likely stolen from Plaintiff's salon.

130)    **Statement of Misti Harding**, April 1, 2023:

"1) On March 22, 2023, I researched online for the "best" in hair extensions in Portland, and found it was *'PDX Hair Extensions'* (owned and operated by Kimberly Schoene) and I booked an appointment, online, for Saturday, April 1, 2023.

"2) After I booked the appointment, I forgot to get the address.

"3) In trying to find the address of *'PDX Hair Extensions'* (owned and operated by Kimberly Schoene) I searched on social media platforms of Instagram and Tik-Tok, and there were salons that appeared that said *'PDX Hair Extensions'* but it was not the same *PDX Hair Extensions* that I booked the appointment with.  I did these searches in the week preceding the appointment.

"4) I was confused by the false *PDX Hair Extensions* profile pages, as I was looking for the correct address of *PDX Hair Extensions* owned by Kimberly Schoene.

"5) I knew that *'PDX Hair Extensions'* (owned and operated by Kimberly Schoene) has a picture of Kimberly Schoene and her pink hair which is how I recognized the correct *'PDX Hair Extensions'* when I finally found the correct salon that I had booked the appointment with.

"6) On April 1, 2023, when I got to the appointment, I explained to Kimberly Schoene that I had difficulty in finding the address for her salon, because of what is explained above." **(Exhibit M-8**; emphasis added.)

131)   Ms. Harding's Statement evidences the following:

    a)   As a consumer, she was very confused as to the affiliation of "PDX Hair Extensions" because of the counterfeited service mark used by Defendants, online.

    b)   Ms. Harding was seeking PDX Hair Extensions based on the reputation of PDX Hair Extensions and Plaintiff Kimberly Schoene's services.  She recognized PDX Hair Extensions only by Plaintiff's pink hair, and otherwise was completely confused as to find the correct "PDX Hair Extensions" due to the deception by Defendants.

132)   **Statement of Stephanie Filipelli**, April 4, 2023:

"1) I am making this Statement voluntarily, and I have not been coerced or paid to make this Statement, which is the truth to the best of my knowledge.

"2) Prior to the events described in this Statement, I never had met Kimberly Schoene, Penelope Christensen, nor Amie Terry.

"3) I have lived in the Portland area for about 9 years.

"4) In December 2020, I was looking to get hair extensions, in Portland.

"5) I did a search on the Internet and found "PDX Hair Extensions" and called to book an appointment.

"6) I spoke with Penelope Christensen who worked for PDX Hair Extensions prior to the appointment, about specifics for the hair extension service.

"7) On December 20, 2020, I went to the appointment at 1801 NW Upshur, Portland, OR 97209, the location of PDX Hair Extensions.

"8) Penelope Christensen did my hair extensions, and I paid her $1,550 for the hair extensions, directly to her account, plus additional $140 for products.

"9) I later learned from Kimberly Schoene that PDX Hair Extensions was charging $1,100 at this time.

"10) I have learned and know now, from the hair extensions done by Kimberly Schoene, that hair extensions usually last 6-8 months when done by Kimberly Schoene (or her current co-worker, Amie Terry).

"11) The hair extensions service done by Penelope Christensen in December 2020 was not good at all.

"12) Shortly thereafter, I contacted Penelope to fix my hair extensions, and I went back to the 1801 NW Upshur location at PDX Hair Extensions and Penelope worked on my hair, charging me $1,550.

"13) The hair extensions were not done properly again, and bundles of hair were falling out.

"14) I again contacted Penelope at PDX Hair Extensions and she re-did my hair again, charging me $700.

"15) Penelope claimed it was my fault that the hair was falling out.

"16) Around April 11, 2021, I needed to have my hair fixed again, and called Penelope.  She fixed my hair at PDX Hair Extensions at 1801 NW Upshur, charging me $1,100.

"17) On April 29, 2021, I went to her own shop at 1251 NW 19th, called "B Love." When I went to Penelope this time, I complained to Penelope that I have been charged many times for the same job.  Penelope got upset with me and said I should go see Kim Schoene at PDX Hair Extensions to fix it.

"18) Penelope told me she was on her own now, and proceeded to bad mouth Kimberly Schoene, whom I had never met (I had seen Kim at PDX Hair Extensions when I went there, but never met her).

"19) Penelope told me that Kim was on drugs, using pills, and that Kim had fired her.

"20) Penelope sent me a series of text messages where she said she wanted to set the dumpsters on fire outside of PDX Hair Extensions at 1801 NW Upshur, and she implied that she wanted to mess up Kim's cars.

"21) I learned a short time later, from Kimberly Schoene, that the dumpsters were set on fire outside of PDX Hair Extensions at 1801 NW Upshur in May of 2021.

"22) The initial job done by Penelope and each "fix" job were terrible, and I needed to get my hair extensions done properly, so I called PDX Hair Extensions and made an appointment with the owner, Kimberly Schoene.

"23) Before I went to PDX Hair Extensions, only from what Penelope Christensen had told me about Kimberly Schoene, I was led to believe that Kim was a drug/pill addict and an unkind and rude person.

"24) On April 30 or May 1, 2021, I called Kim Schoene and talked about the problems with the hair extensions done by Penelope, how much I had spent, and was very upset. I was crying on the phone because I thought my hair was ruined.

"25) On May 2, 2021, I went to see Kimberly Schoene to get the job done by Penelope Christensen done by Kimberly Schoene.

"26) When I met Kimberly Schoene, I found that she was kind, respectful, and she did a very good job fixing the hair extension job done by Penelope Christensen (even after Penelope tried to fix her own poor job 3 times).

"27) I have come to learn that Penelope Christensen lied to me in just about everything she told me about Kim, and that Kim is a very reputable and honest business owner.

"28) Since May 4, 2021, I have gone to Kimberly Schoene at PDX Hair Extensions, 1801 NW Upshur, each time I needed to get new hair extensions.

"29) Kim has not had to fix any of her own work, and always has done a top-quality job.

"30) When I got my hair extensions done by Kimberly Schoene, she told me the following things I did not know until then:

a. That PDX Hair Extensions was only charging $1,100 for the hair extension service (and hair) that I paid $1,550 directly to Penelope Christensen on December 20, 2020;

b. That the payment should have gone to PDX Hair Extensions, and not Penelope Christensen because Penelope was not an owner. Penelope Christensen told me that she was an owner of PDX Hair Extensions. I have learned that she has never had any ownership in PDX Hair Extensions which is owned exclusively by Kimberly Schoene.

c. That PDX Hair Extensions/Kimberly Schoene never received any money from the service or the hair that Penelope did, on any of the times I paid her, and that Penelope essentially embezzled these payments from PDX Hair Extensions and/or Kimberly Schoene.

"31) On May 17, 2021, I sent an email to Kimberly Schoene at pdxhair@gmail.com, attached as **Exhibit 1** to this Statement.

"32) My email to Kimberly Schoene sent shortly after the events described in this Statement, states the following (for the record):

*"My name is Stephanie filippelli and on April 11th 2021 I went and I got my hair done at PDX extension while i was getting my hair done Penelope was telling me how Kim fired her and always fires her and then proceeded to tell me that we couldn't talk about it here because of the cameras so after the day it was over she sent me a series of text messages in which after I called her after and she proceeded to tell me that she was drunk and extremely upset about getting fired and how she wanted to set the dumpsters on fire outside of PDX extensions and how she implied that she wanted to mess up Kim cars and that she thinks Kim is on drugs and how she is obsessed with her stepson who in reality is being abused she also told me how she was taking on client in her own dwelling using the products from Kim shop one of the clients that she took on at her house was in fact one of my sister's friends also after Penelope moved locations I went to her one time and I asked her to not cut my extensions and she didn't listen to me and then she used the same beads as the one Kim has to put the hair that I brought in she absolutely made a mess of my hair carelessly she would not stop obsessing over the fact that there was a new employee and also said a lot of terrible things about this new employee at PDX extensions as well not knowing the situation I believe her later on to find out she was lying Kim is none of the things that she said she was and in fact one of the most outstanding business owners I have ever met not only did Kim take on the mess Penelope created but she did it with Grace structure and efficiency"* [Exhibit 1 to Filipelli Statement.]

"33) Penelope Christensen traumatized me when I had to go meet Kimberly Schoene, because I was scared that Kim would be mean, and I felt like I had to go to Kim in order to get my hair fixed properly. So the first time I met Kim I was very nervous, until I started talking to Kim and found that she was kind and not anything like what Penelope had described."

**(Exhibit M-9 to M-13.)**

133) Ms. Filipelli's Statement evidences the following:

  a) Filipelli believed (initially) that she was having PDX Hair Extensions perform the services for the hair extensions, when it was Defendant Christensen.

  b) Defendant Christensen used deception in what she told Ms. Filipelli about the ownership of PDX Hair Extensions.

  c) Defendant Christensen defamed Plaintiff.

  d) Defendant Christensen suggested that Filipelli vandalize Plaintiff's salon, PDX Hair Extensions.

  e) Defendant Christensen made herself to be another, namely, PDX Hair Extensions.

  f) Christensen suggested to Ms. Filipelli that she start a fire in the dumpster outside of PDX Hair Extensions (and later a fire was started in the dumpster).

134) Text from Mariah, sister of Stephanie Filipelli:

"I promise you the only person that is f****** anyone over its Penelope when I went to Kim she not only didn't charge me as much money as Penelope did to redo my whole head of hair but she did such an amazing job better than I've ever had anybody ever do my hair in my entire life I can't believe I even for second thought Penelope was anything good compared to [Kim] I sent you her number you should go to her and tell her everything that's going on and she will fix it and probably not charge you as much as Penelope did she just wants to keep the client fix the problem and make the person happy don't go to Penelope again she is f effing crazy drunk she called me drunk and was like asking me to break into Kim's shop and steal all of her stuff and all sorts of crazy stuff and then she f***** up my hair and I called Kim crying and Kim spend seven and a half hours on my hair trying to fix it and she did she made me more happy and I haven't had to go back to her since don't go to Penelope again." (**Exhibit M-14**.)

## DEFENDANTS' UNLAWFUL ACTIVITIES

135)    In blatant disregard of Kimberly Schoene's rights, Defendants are using, displaying, advertising, and marketing in interstate commerce using the three (3) sequential words "PDX Hair Extensions."  The infringing words are identical to Plaintiff's Service Mark "PDX Hair Extensions."

136)    Without doubt, Defendants had knowledge of and was very familiar with PDX Hair Extensions when it using, displaying, advertising and marketing by using the same search terms (see **Exhibits D, E, F, G, H, I, J, K, L).**

137)    Clearly, Defendants intentionally adopted and used the three (3) identical words *"Pdx hair extensions"* in the same sequential order, in order to knowingly and intentionally mislead and deceive consumers into believing that Defendants' service was produced, authorized, or licensed by PDX Hair Extensions and Kimberly Schoene, or that the service originated from PDX Hair Extensions and/or Kimberly Schoene.

138)    Defendants are not associated, affiliated, or connected with Kimberly Schoene or PDX Hair Extensions.  Further, Defendants are not licensed, authorized, sponsored, endorsed, or approved by PDX Hair Extensions and Kimberly Schoene in any way.

139)    Kimberly Schoene used *"PDX Hair Extensions"* extensively and continuously before Defendants began using the infringing three-words in: (i) search terms; or (ii) marketing, promoting, advertising; or (iii) her salon's registered business name.

140)    The likelihood of confusion, mistake, and deception created by Defendants' Infringing Use of Plaintiff's Service Mark *"PDX Hair Extensions"* is causing irreparable harm to the reputation of the quality that Plaintiff's Service Mark *"PDX Hair Extensions"* embodies.

141)    Defendants' activities are likely to cause confusion before, during, and after the time of purchase because purchasers, prospective purchasers, and others viewing Defendants' Infringing Use at the point of sale – due to Defendants' use of a confusingly similar imitation of Plaintiff's Service Mark *"PDX Hair Extensions"* in online marketing – to mistakenly attribute Defendants' services to those of Plaintiff and PDX Hair Extensions.

142)    Defendants continue to use the three-words in sequential order ("PDX Hair Extensions") in connection hair extensions services and products that directly competes with the services and products of Plaintiff.   Defendants began using the name "PDX Hair Extensions" long after Plaintiff had established protectable rights for PDX Hair Extensions.

143)    Defendants knowingly, willfully, intentionally, and maliciously adopted and used a confusingly similar imitation of Plaintiff's Service Mark *"PDX Hair Extensions"* in bad faith.

## DAMAGES

144)    **DEFENDANTS' PROFITS:** The amount Defendants have profited in additional gross retail sales, due to Defendants' deceptive use of Plaintiff's Service Mark *"Pdx hair extensions"* and counterfeiting of such, is estimated at **$100,000** (on the trademark claims).  (Decl. ¶134.)

145)    **TREBLE DAMAGES:** Plaintiff is entitled to treble damages because Defendants acted in bad faith, knowingly and intentionally using Plaintiff's Service Mark, repeatedly and continuously, and after the notice of intent to file lawsuit then increased the Infringing Use as a malicious act against Plaintiff, intentionally trying to harm Plaintiff and to enrich herself.  The amount is three (3) times Defendants' profits, estimated at **$300,000**. (Decl. ¶135.)

146)    **LOST PROFITS:** Plaintiff suffered lost profits due to the deceptive actions of Defendants, estimated at **$100,000** (on the unfair business practices claims).  (Decl. ¶136.)

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**(Federal Trademark Infringement)**

147)    Plaintiff realleges and incorporates by reference the paragraphs above.

148)    **Defendants' Use of Plaintiff's Mark:** Defendants used the Plaintiff's Service Mark, using the name *"Pdx hair extensions"* on the website of Defendants, online advertising, online search terms, infringing on Plaintiff's Service Mark.

149)    **Defendants' Use In commerce:** Defendants' use Plaintiff's Service Mark in commerce, when Defendants advertise in multiple states or across marketing channels through the Internet, on several websites.

150)    **Defendants use of Plaintiff's Service Mark has caused and is causing a likelihood of confusion** because when consumers view the infringing mark of Defendants, they would probably assume that the product or service it represents is associated with the source of Plaintiff.

151)    The use of the Plaintiff's Service Mark by Defendants has been deliberate, willing, knowing, and intentional, in order to confuse the public as to the affiliation of the name "PDX Hair Extensions" in order to deter potential clients away from Plaintiff's website (or location on maps) and to Defendants' website (and/or map location), through the deceptive search term identifiers and advertisements of Defendants, and other means alleged herein to confuse the consuming public.

152)    The acts of Defendants constitute trademark infringement in violation of federal law.

153)    Defendants' use of the three (3) words in sequential order *"PDX Hair Extensions"* and *"pdxhairextensions"* and *"#pdxhairextensions,"* in online commerce, is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of the products and

services of Defendants in that others are likely to believe that Defendants' services are in some way legitimately connected with, sponsored or licensed by, or otherwise related to Plaintiff.

154)    Defendants' use of the three (3) words in sequential order *"PDX Hair Extensions"* and *"pdxhairextensions"* and *"#pdxhairextensions,"* in online commerce, was made with actual or constructive knowledge of Plaintiff's rights in *"Pdx hair extensions."*

155)    Defendants' use of the three (3) words in sequential order *"PDX Hair Extensions"* and *"pdxhairextensions"* and *"#pdxhairextensions,"* in online commerce, is without Plaintiff's consent or permission, and against Plaintiff's will.

156)    Defendant Christensen is aware she is in violation of federal law, and has refused to discontinue use of Plaintiff's Service Mark, in willful violation of law.

157)    Defendants' use and display of Plaintiff's Service Mark *"Pdx hair extensions"* has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services are associated or connected with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.

158)    In violation of 15 USC § 1114, any use by Defendants of the three (3) words in sequential order, *"PDX Hair Extensions"* or *"pdxhairextensions"* or *"#pdxhairextensions,"* in online commerce, is confusingly similar to Plaintiff's federally registered Service Mark *"Pdx hair extensions."* Defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's reputation as known through Plaintiff's Service Mark, for which Plaintiff has no adequate remedy at law.

159)   Defendants' actions are in bad faith, demonstrated by the intentional, willful, and malicious intent to conduct commerce, advertise, use and display Plaintiff's Service Mark to Plaintiff's irreparable harm.

160)   Defendants caused and are likely to continue causing substantial injury to Plaintiff and to the public, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable legal costs and fees under 15 USC §§ 1114, 1116, and 1117.

161)   Defendants' acts of trademark infringement, unless enjoined, will cause Plaintiff to sustain monetary damages, loss, and injury.

**SECOND CLAIM FOR RELIEF**
**(Federal Trademark Counterfeiting)**

162)   Plaintiff realleges and incorporates by reference the paragraphs above.

163)   Defendants' use of the specific three (3) words in the same sequential order, is a counterfeit because Plaintiff's Service Mark *"Pdx hair extensions"* is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and has been in continual use, in commerce, by Plaintiff since 2017, whether or not Defendants knew Plaintiff's Service Mark was so registered.

(15 USC § 1116(d)(1)(B)(i).)

164)   Further, Defendants' use is "a spurious designation that is identical with, or substantially indistinguishable from" Plaintiff's Service Mark *"Pdx hair extensions."*

(15 USC § 1116(d)(1)(B)(ii).)

165)   Plaintiff is entitled to recover: (1) defendant's profits, (2) Damages sustained by Plaintiff, and (3) Costs of this action.  (15 U.S. Code § 1117(a).)

166)    Under 15 U.S. Code § 1117(b) Plaintiff is entitled to a judgment for three times Defendants' profits or damages, whichever amount is greater, together with reasonable legal costs because Defendants' violations consist of intentionally counterfeiting Plaintiff's Mark or designation, knowing such Mark or designation is a counterfeit mark, in connection with Defendants' sale, offering for sale, or distribution of goods or services.

167)    In violation of 15 USC § 1114, any use by Defendants of the three (3) words in sequential order, *"PDX Hair Extensions"* or *"pdxhairextensions"* or *"#pdxhairextensions,"* in online commerce, is counterfeiting Plaintiff's federally registered Service Mark *"Pdx hair extensions."* Defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's reputation as known through Plaintiff's Service Mark, for which Plaintiff has no adequate remedy at law.

168)    Defendants' actions are in bad faith, demonstrated by the intentional, willful, and malicious intent to conduct commerce by counterfeiting Plaintiff's Service Mark, to Plaintiff's irreparable harm.

169)    Defendants acts of counterfeiting has caused and is likely to continue causing substantial injury to Plaintiff and to the public, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, treble damages, costs, and reasonable legal costs and fees under 15 USC §§ 1114, 1116, and 1117.

170)    Defendants' acts of trademark infringement, unless enjoined, will cause Plaintiff to sustain monetary damages, loss, and injury.

## THIRD CLAIM FOR RELIEF
### (Federal Trademark Dilution)

171)    Plaintiff realleges and incorporates by reference the paragraphs above.

172)    Plaintiff has exclusively and continuously promoted and used the Service Mark *"Pdx hair extensions"* both online marketing with items such business cards, handbags, etc. Plaintiff's Service Mark *"Pdx hair extensions"* became well-known name of Plaintiff and Plaintiff's services well before Defendants began using Plaintiff's Service Mark *"Pdx hair extensions"* or before Defendants were in business.

173)    Defendants, by using Plaintiff's Service Mark *"Pdx hair extensions"* in commerce, have diluted and will likely continue to dilute the distinctiveness of Plaintiff's Service Mark *"Pdx hair extensions"* by eroding the public's exclusive identification of Plaintiff's Service Mark *"Pdx hair extensions"* with Plaintiff, tarnishing and degrading the positive associations of Plaintiff's Service Mark *"Pdx hair extensions,"* and otherwise lessening the capacity of Plaintiff's Service Mark *"Pdx hair extensions"* to identify and distinguish Plaintiff's hair extension services from the hair extension services of Defendants.

174)    Defendants' actions demonstrate an intentional, willful, and malicious intent to advertise on the reputation associated with Plaintiff's Service Mark *"Pdx hair extensions"* or to cause dilution of Plaintiff's Service Mark to the significant and irreparable injury to Plaintiff.

175)    Defendants have caused and will continue to cause irreparable injury to Plaintiff's business reputation, and dilution of the distinctiveness and value of Plaintiff's distinctive Service Mark in violation of 15 USC § 1125(c).

176)    Plaintiff therefore is entitled to injunctive relief and to Defendants' profits, actual damages, enhanced profits and damages, punitive damages, and reasonable legal costs and fees under 15 USC §§ 1125(c), 1116, and 1117.

**FOURTH CLAIM FOR RELIEF**
**(Federal Unfair Competition)**

177)    Plaintiff realleges and incorporates by reference the paragraphs above.

178)    This cause of action for unfair competition arises under 15 USC § 1125 (a)(1).

179)    Defendants' use of Plaintiff's Service Mark *"Pdx hair extensions"* in commerce for architecture services as alleged herein is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff or as to the origin, sponsorship, or approval of the services of Defendants and those of Plaintiff, and misrepresents the nature, characteristics, and qualities of those services.

180)    Defendants have made false representations, false descriptions, and false designations of, on, or in connection with the source of its services in violation of 15 USC § 1125(a). Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's reputation as symbolized by Plaintiff's Service Mark *"Pdx hair extensions"* for which Plaintiff has no adequate remedy at law.

181)    Defendants' actions demonstrate an intentional, willful, and malicious intent to conduct commerce, advertise, use and display Plaintiff's Service Mark *"Pdx hair extensions"* to Plaintiff's irreparable harm.

182)    Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff.  Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable legal costs and fees under 15 USC §§ 1114, 1116, and 1117.

## FIFTH CLAIM FOR RELIEF
### (Federal Unfair and Deceptive Trade Practices)

183)    Plaintiff realleges and incorporates by reference the paragraphs above.

184)    Defendants has been and is passing off its goods as those of Plaintiff, causing a

likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of

Defendants' goods, causing a likelihood of confusion as to Defendants' affiliation, connection,

or association with Plaintiff, and otherwise damaging the public.

185)    Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a

business, trade, or commerce in violation of 15 USC § 1125(a).

186)    Defendants' unauthorized use of a confusingly similar imitation of Plaintiff's Service

Mark *"Pdx hair extensions"* has caused and is likely to cause substantial injury to the public

and to Plaintiff.  Plaintiff, therefore, is entitled to injunctive relief and to recover damages and,

if appropriate, punitive damages, costs, and reasonable legal costs and fees.

## SIXTH CLAIM FOR RELIEF
### (Oregon Trademark Infringement)

187)    Plaintiff realleges and incorporates by reference the paragraphs above.

188)    Trademark infringement has occurred because of Defendants' use of Plaintiff's Service

Mark that has already and is likely to cause consumer confusion.

189)    ORS 647.105(1) provides a remedy for the owner of a mark registered, to file a civil

action to seek an injunction against the use or display of a counterfeit or imitation of the mark.

190)    Defendants must be restrained from use or display of Plaintiff's Service Mark *"Pdx hair*

*extensions"* in any form or likeness under ORS 647.105(1)(a).

191)    Defendants have used a reproduction, counterfeit, copy and colorable imitation of Plaintiff's Service Mark *"Pdx hair extensions,"* and the use is likely to cause confusion or mistake or to deceive as to the origin of the services.  (ORS 647.095(1)(a).)

192)    Defendants do not have Plaintiff's consent to use Plaintiff's Service Mark *"Pdx hair extensions"* in any form or format, Defendants are not in connection with Plaintiff for the offer for sale or advertisement of hair extensions' services, and Defendants are not affiliated with Plaintiff or PDX Hair Extensions.  (ORS 647.095(1)(a).)

193)    Defendants have applied Plaintiff's Service Mark *"Pdx hair extensions"* to advertisements intended for use in connection with the sale or distribution of goods or services within this state.  (ORS 647.095(1)(b).)

194)    Plaintiff may recover profits or damages from Defendants, because Defendants have acted with the intent to cause confusion or mistake or to deceive it the use in online commerce of Plaintiff's Service Mark *"Pdx hair extensions."* (ORS 647.095(2).)

195)    Defendants are required to pay to Plaintiff all profits the Defendants derived from use of Plaintiff's Service Mark *"Pdx hair extensions"* and all damages Plaintiff has suffered from the use or display of Plaintiff's Service Mark under ORS 647.105(1)(b).

196)    Defendants are required to remove from all online sources, all counterfeits or imitations of Plaintiff's Service Mark under the Defendants' control under ORS 647.105(1)(c).

197)    Defendants have acted in bad faith, knowingly and intentionally using and displaying Plaintiff's Service Mark and the Court should enter a judgment in an amount not to exceed three times the sum of Defendants' profits and Plaintiff's damages and reasonable legal costs and fees under ORS 647.105(2).

## SEVENTH CLAIM FOR RELIEF
### (Oregon Trademark Counterfeiting)

198)    Plaintiff realleges and incorporates by reference the paragraphs above.

199)    Plaintiff owns the service mark *"Pdx hair extensions"* and the business name *"PDX Hair Extensions."*

200)    Defendant Christensen has been aware that Plaintiff owns "PDX Hair Extensions" since Plaintiff and Defendant Christensen signed the ICA on March 22, 2017.

201)    Plaintiff has never given Defendants consent to use the name *"Pdx hair extensions"* in any manner.

202)    Defendants have knowingly and intentionally used the identical or near reproduction, counterfeit, copy and colorable imitation of Plaintiff's Service Mark, and the use is likely to cause confusion or mistake or to deceive as to the origin of the services (ORS 647.095(1)(a)).

203)    Defendants have knowingly and intentionally applied Plaintiff's Service Mark to advertisements intended for use in connection with the sale or distribution of goods or services within this state. (ORS 647.095(1)(b)).

204)    Defendants are liable for the remedies provided in ORS 647.105 in this civil action brought by Plaintiff, and Plaintiff may recover profits or damages from Defendants, because Defendants have acted with the intent to cause confusion or mistake or to deceive it the use in online commerce of Plaintiff's Service Mark *"Pdx hair extensions"* (ORS 647.095(1)(c)).

205)    Defendants have intentionally, repeatedly and continuously, counterfeited Plaintiff's Service Mark *"Pdx hair extensions"* by knowingly, and with the intent to sell or distribute and without the consent of Plaintiff, used, displayed, advertised under Plaintiff's Service Mark *"Pdx hair extensions"* that is identified by a counterfeit of Plaintiff's Service Mark *"Pdx hair extensions"* registered under 15 USC §1052 (ORS 647.135(1)).

206)    Defendants had and have knowledge that the use of Plaintiff's Service Mark *"Pdx hair extensions"* is counterfeit (ORS 647.135(1)).

207)    Defendants' use of the three (3) words in sequential order *"PDX Hair Extensions"* and *"pdxhairextensions"* and *"#pdxhairextensions,"* in online commerce or in any other form of advertising or marketing or self-promotion, is counterfeit because it is identical to or substantially indistinguishable from Plaintiff's Service Mark *"Pdx hair extensions."*

208)    Defendants have used and are currently using the terms *"PDX Hair Extensions"* and *"pdxhairextensions"* and *"#pdxhairextensions"* in connection with the same type of goods (the hair and products) and services (hair extension installation, maintenance) for which Plaintiff's Service Mark *"Pdx hair extensions"* is registered.  (ORS 647.135(2).)

209)    Defendants do not have Plaintiff's consent and Defendants are not in connection with Plaintiff for the offer for sale or advertisement of services.

210)    Because Defendant acted in bad faith, with knowledge that the use of Plaintiff's Service Mark *"Pdx hair extensions"* was counterfeit, the Court should award to Plaintiff three times the sum of Defendants' profits and Plaintiff's damages and reasonable legal costs and fees under 15 U.S. Code §1117(b) and ORS 647.105.

211)    As a direct and proximate cause of Defendants' actions alleged herein, Plaintiff is entitled to statutory damages, economic damages, Defendants' profits, treble damages, all legal fees and costs.

## EIGHTH CLAIM FOR RELIEF
### (Oregon Trademark Dilution)

212)    Plaintiff realleges and incorporates by reference the paragraphs above.

213)    Plaintiff has exclusively and continuously promoted and used the Service Mark *"Pdx hair extensions"* both online marketing with items such business cards, handbags, etc. Plaintiff's Service Mark *"Pdx hair extensions"* became well-known name of Plaintiff and Plaintiff's services well before Defendants began using Plaintiff's Service Mark *"PDX Hair Extensions"* or before Defendants were in business.

214)    Defendants, by using Plaintiff's Service Mark *"Pdx hair extensions"* in commerce, have diluted and will likely continue to dilute the distinctiveness of Plaintiff's Service Mark *"Pdx hair extensions"* by eroding the public's exclusive identification of Plaintiff's Service Mark *"PDX Hair Extensions"* with Plaintiff, tarnishing and degrading the positive associations of Plaintiff's Service Mark *"Pdx hair extensions,"* and otherwise lessening the capacity of Plaintiff's Service Mark *"Pdx hair extensions"* to identify and distinguish Plaintiff's hair extension services from the hair extension services of Defendants.

215)    Defendants' actions demonstrate an intentional, willful, and malicious intent to advertise on the reputation associated with Plaintiff's Service Mark or to cause dilution of Plaintiff's Service Mark *"Pdx hair extensions"* to the significant and irreparable injury to Plaintiff.

216)    Defendants have caused and will continue to cause irreparable injury to Plaintiff's business reputation, and dilution of the distinctiveness and value of Plaintiff's distinctive Service Mark in violation of ORS 647.107.

217)    Plaintiff therefore is entitled to injunctive relief and to Defendants' profits, actual damages, enhanced profits and damages, punitive damages, and reasonable legal costs and fees under ORS 647.105, *et. seq.*

## NINTH CLAIM FOR RELIEF
### (Oregon Unfair Trade Practices)

218)    Plaintiff realleges and incorporates by reference the paragraphs above.

219)    A civil action may be brought by a private party under ORS 646.638 for violations of Oregon's Unfair Trade Practices Act ("UTPA"), ORS 646.605, *et. seq*.

220)    Defendants has made false representations, false descriptions, and false designations of, on, or in connection with the source of its services in violation of ORS 646.608.

221)    Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's reputation as symbolized by Plaintiff's Service Mark, for which Plaintiff has no adequate remedy at law.

222)    Defendants' actions demonstrate an intentional, willful, and malicious intent to conduct commerce, advertise, use and display Plaintiff's Service Mark to Plaintiff's irreparable harm.

223)    Defendants' use of Plaintiff's Service Mark *"Pdx hair extensions"* and *"pdxhairextensions"* and *"#pdxhairextensions"* in online commerce is likely to and has caused confusion and misunderstanding as to source, sponsorship, approval, or certification of the services of Defendants services with that of Plaintiff.  (ORS 646.608(1)(b).)

224)    Defendants' use of Plaintiff's Service Mark *"Pdx hair extensions"* and *"pdxhairextensions"* and *"#pdxhairextensions"* in online commerce causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, Plaintiff.  (ORS 646.608(1)(c).)

225)    Defendants have represented that its services have sponsorship, approval, characteristics, or qualities that Defendants' services do not have, or Defendants have a sponsorship, approval,

status, qualification, affiliation, or connection with PDX Hair Extensions that Defendants do not have.  (ORS 646.608(1)(e).)

226)    Defendants have represented in online commerce that its services are of the particular standard, quality, or grade as provided by Plaintiff at her salon "PDX Hair Extensions."  (ORS 646.608(1)(g).)

227)    Defendants have disparaged the services of Plaintiff by false or misleading representations of fact in the use of Plaintiff's Service Mark *"Pdx hair extensions"* and *"pdxhairextensions"* and *"#pdxhairextensions"* in online commerce.  (ORS 646.608(1)(h).)

228)    Defendants has made false representations, descriptions, and designations in connection with the source of its services in violation of ORS 646.608.

229)    Defendants' actions demonstrate an intentional, willful, and malicious intent to conduct commerce, advertise, use and display Plaintiff's Service Mark to Plaintiff's irreparable harm and financial damage.

230)    Defendants have been advertising its services as those of Plaintiff, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Defendants' services, causing a likelihood of confusion as to Defendants' affiliation, connection, or association with Plaintiff, and otherwise damaging the public.

231)    Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the UTPA.

232)    Defendants caused and are likely to continue causing substantial injury to Plaintiff and the public, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, and legal costs and fees under ORS 646.638(3).

**PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff prays that:**

233)    Defendants and all of its agents, officers, employees, representatives, successors,

assigns, attorneys, and all other persons acting for, with, by, through or under authority from

Defendants, or in concert or participation with Defendants, and each of them, be enjoined from:

  a)  Using, displaying, advertising, marketing, or promoting *"Pdx hair extensions"* in
      any format;

  b)  Using *"PDX Hair Extensions"* in connection with any of Defendants' services;

  c)  Using *"Pdx hair extensions,"* or any other copy, reproduction, colorable imitation,
      or simulation of *"Pdx hair extensions"* on or in connection with Defendants'
      services;

  d)  Using any trademark, name, logo, design, or source designation of any kind on or in
      connection with Defendants' services that is a copy, reproduction, colorable
      imitation, or simulation of, or confusingly similar to *"Pdx hair extensions";*

  e)  Using any phrase, terms or words in connection with Defendants' services that is
      likely to cause confusion, mistake, deception, or public misunderstanding that such
      services are provided by Plaintiff, or are sponsored or authorized by Plaintiff, or are
      in any way connected or related to Plaintiff;

  f)  Using any phrase, terms or words in connection with Defendants' services that
      dilutes or is likely to dilute the distinctiveness of Plaintiff's Service Mark *"Pdx hair
      extensions";*

  g)  Passing off, palming off, or assisting in passing off or palming off Defendants'
      services as those of Plaintiff, or otherwise continuing any and all acts of unfair
      competition as alleged in this Complaint.

234)    Defendants be ordered to cease using, displaying, advertising, marketing, or promoting

Plaintiff's Service Mark *"Pdx hair extensions"* or any other confusingly similar imitation of

Plaintiff's Service Mark *"Pdx hair extensions."*

235)    Defendants be compelled to account to Plaintiff for any and all profits derived by

Defendants from use of Plaintiff's Service Mark *"Pdx hair extensions."*

236)    Plaintiff be awarded all damages caused by the acts forming the basis of this Complaint.

237)    Based on Defendants' knowing and intentional use of a confusingly similar imitation of Plaintiff's Service Mark *"Pdx hair extensions,"* the damages awarded be trebled and the award of Defendants' profits be enhanced under 15 USC §1117(a) and ORS 647.105(2).

238)    Defendants be required to pay to Plaintiff the costs and reasonable legal costs and fees incurred by Plaintiff in this action pursuant to 15 USC §1117(a) and ORS 646.638.

239)    Based on Defendants' willful and deliberate infringement, counterfeiting and dilution of Plaintiff's Service Mark *"Pdx hair extensions,"* and to deter such conduct in the future, Plaintiff be awarded punitive damages.

240)    Plaintiff be awarded prejudgment and post-judgment interest on all monetary awards.

241)    Plaintiff be granted such other and further relief as the Court may deem just.


### JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.


Dated: May \\ , 2023

Kimberly Schoene, Plaintiff Pro Se
1801 NW Upshur, Suite 100
Portland, OR 97209
(503) 713-7000
hissmallvoice@gmail.com

*Kimberly Schoene vs. Penelope Christensen, et al*
**COMPLAINT – TABLE OF CONTENTS**

| NO. | SECTION | PAGE |
|-----|---------|------|
| 1 | Introduction | 1 |
| 2 | Parties | 8 |
| 3 | Jurisdiction and Venue | 9 |
| 4 | Plaintiff's Demand Letter to Defendants | 9 |

**<u>Facts Common to All Claims for Relief</u>**

| NO. | SECTION | PAGE |
|-----|---------|------|
| 5 | Plaintiff's Registered Service Mark *"PDX Hair Extensions"* | 10 |
| 6 | Plaintiff's Registered Business *"PDX Hair Extensions"* | 11 |
| 7 | Plaintiff's Use of *"PDX Hair Extensions"* in Commerce | 12 |
| 8 | Defendants' Use of Plaintiff's Service Mark *"PDX Hair Extensions"* in Commerce Causing Confusion with Consumers | 14 |
| 9 | Defendant Christensen's Deception about Being a Partner of Plaintiff and/or Part-Owner of PDX Hair Extensions | 16 |
| 10 | Defendants Counterfeiting Plaintiff's Service Mark *"PDX Hair Extensions"* | 17 |
| 11 | Defendants' Use is Diluting the Quality and Strength of Plaintiff's Service Mark in the Portland Hair Extensions' Market | 17 |
| 12 | Plaintiff Kimberly Schoene – Successful Business Owner | 20 |
| 13 | Plaintiff Kimberly Schoene – Expert Hair Dresser and Publicly Known as the "Best in Portland" For Hair Extensions | 21 |
| 14 | Plaintiff's Mark is "Famous" in the Hair Extensions' Market for the Portland Area Consuming Public | 22 |
| 15 | Plaintiff's Reliance on Top-Quality Reputation | 23 |
| 16 | Hair Extensions' Industry & Marketing in the Portland-Area | 24 |
| 17 | Statements of Witnesses | 27 |
| 18 | Defendants' Unlawful Activities | 35 |
| 19 | Damages | 36 |

### Claims for Relief

| | | |
|---|---|---|
| 20 | First Claim for Relief – Federal Trademark Infringement | 37 |
| 21 | Second Claim for Relief – Federal Trademark Counterfeiting | 39 |
| 22 | Third Claim for Relief – Federal Trademark Dilution | 41 |
| 23 | Fourth Claim for Relief – Federal Unfair Competition | 42 |
| 24 | Fifth Claim for Relief – Federal Unfair and Deceptive Trade Practices | 43 |
| 25 | Sixth Claim for Relief – Oregon Trademark Infringement | 43 |
| 26 | Seventh Claim for Relief – Oregon Trademark Counterfeiting | 45 |
| 27 | Eighth Claim for Relief – Oregon Trademark Dilution | 47 |
| 28 | Ninth Claim for Relief – Oregon Unfair Trade Practices | 48 |
| 29 | Prayer for Relief | 50 |
| 30 | Jury Trial Demand | 51 |