IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KIMBERLY M. SCHOENE,<br><br>        Plaintiff,<br>v.<br><br>PENELOPE CHRISTENSEN and PORTLAND HAIR EXTENSIONS BY PENELOPE,<br><br>        Defendants. | Case No.: 3:23-cv-00693-AN<br><br>OPINION AND ORDER |

*Pro se* plaintiff Kimberly M. Schoene brings this action against defendants Penelope Christensen ("Christensen") and Portland Hair Extensions by Penelope (collectively, "defendants"), alleging federal and state law claims for trademark infringement, trademark counterfeiting, trademark dilution, unfair competition, and unfair trade practices. Plaintiff's Motion for Preliminary Injunction was denied on August 10, 2023. Op. & Order of Aug. 10, 2023, ECF [27]. Defendants filed a Motion for Summary Judgment, ECF [30], on September 11, 2023. The Court finds that oral arguments would not aid the resolution of this motion. Local R. 7-1(d). For the foregoing reasons, defendants' motion is GRANTED.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the nonmoving party's case. *Id.*; *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the nonmoving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

## BACKGROUND

Plaintiff owns a business entitled "PDX Hair Extensions." Compl., ECF [1], ¶ 5. PDX Hair Extensions is a hair salon located in Portland, Oregon that specializes in hair extensions. *Id.* On April 9, 2020, plaintiff applied to the U.S. Patent and Trademark Office ("USPTO") to register the trademark, "Pdx hair extensions," on the Principal Register. First Decl. of Kimberly Schoene ("1st Schoene Decl."), ECF [3], ¶ 17. On May 5, 2021, the USPTO notified plaintiff that the mark was refused registration on the Principal Register but that it could be added to the Supplemental Register. Decl. of Penelope Christensen ("Christensen Decl."), ECF [19], Ex. B, at 16-17. On July 20, 2021, plaintiff's trademark, "Pdx hair extensions," was registered on the Supplemental Register. 1st Schoene Decl., Ex. A, at 1. The issued registration denotes the mark's first use as February 2, 2016, and its first use in commerce as February 2, 2017. *Id.* Further, the trademark registration states, "The mark consists of standard characters without claim to any particular font style, size or color" and that "[n]o claim is made to the exclusive right to use the following apart from the mark as shown: 'HAIR EXTENSIONS.'" *Id.*

Defendant Christensen formerly worked at PDX Hair Extensions but left in April 2021 to pursue her own business, entitled "Portland Hair Extensions by Penelope," which is also a defendant in this case. Christensen Decl., ¶¶ 3, 21-22, 28. Since starting her new business, Christensen has used the phrases

"PDX Hair Extensions," "pdxhairextensions," and "#pdxhairextensions" in online commerce to advertise and market Portland Hair Extensions by Penelope. 1st Schoene Decl., Exs., D, E, F, G, H, I, J, K, L. Plaintiff initially sought a preliminary injunction, which this Court denied on August 10, 2023, after finding that plaintiff had not demonstrated a likelihood of success on the merits of her claims. Op. & Order of Aug. 10, 2023. Defendants now move for summary judgment on all plaintiff's claims.

## DISCUSSION

Plaintiff alleges six claims in total against defendants, including: (1) trademark infringement and trademark counterfeiting under 15 U.S.C. § 1114(1) and Oregon Revised Statute ("ORS") §§ 647.095 and 647.105; (2) trademark dilution under 15 U.S.C. § 1125(c) and ORS § 647.107(1); (4) unfair competition under 15 U.S.C. § 1125(a); and (5) unfair and deceptive trade practices under ORS § 646.638 and federal law.[1] These claims are addressed in turn.

**A.    Trademark Infringement, Trademark Counterfeiting, and Unfair Competition**

Trademark infringement cases brought under Oregon law are analyzed within the same framework as federal law. *See Classic Instruments, Inc. v. VDO-Argo Instruments, Inc.*, 73 Or. App. 732, 734, 700 P.2d 677 (1985) (utilizing Lanham Act framework to analyze trademark infringement claim); *see Meyer v. Mittal*, No. 3:21-cv-00621-HZ, 2024 WL 385129, at *34 (D. Or. Feb. 1, 2024) ("Oregon courts appear to apply the standards for Lanham Act claims to claims under Oregon common law."). Under federal law, to prevail on a trademark infringement claim, the plaintiff must show that (1) the plaintiff has a valid, protectible mark, and (2) the defendant's use of the mark is likely to cause consumer confusion. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018).

To warrant protection, a mark must be "distinctive." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1008, 1113 (9th Cir. 2010). Generally, distinctiveness is measured by "the primary significance of the mark to the purchasing public." *Id.* (internal quotation marks omitted). Trademarks usually fall within five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive,

---

[1] Plaintiff does not identify the legal basis for her federal unfair and deceptive trade practices claim.

(4) arbitrary, or (5) fanciful. *Id.* Suggestive, arbitrary, and fanciful marks are "inherently distinctive" and are automatically entitled to trademark protection. *Id.* Generic marks are not protectible. *Id.* Descriptive marks fall in the middle because they are not automatically entitled to protection but may become protectable if they acquire distinctiveness "as used on or in connection with the applicant's goods in commerce." *Id.* (internal quotation marks). The categorization of a mark is usually a question of fact. *Id.*

Registration on the Supplemental Register means that a mark is "capable of distinguishing," but does not conclusively prove a mark's distinctiveness. *Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1454 (9th Cir. 1985). This Court determined that, for purposes of preliminary injunctive relief, plaintiff had not provided sufficient evidence to establish a likelihood that her trademark was valid and protectible. *See* Op. & Order of Aug. 10, 2023, at 5-6. Specifically, this Court found that plaintiff had not presented sufficient evidence to imply that the trademark had acquired a secondary meaning. *Id.* at 3. Notably, the Court made no determination as to whether the phrase "PDX hair extensions" is merely generic or descriptive, focusing instead on plaintiff's likelihood of establishing secondary meaning. Defendants argue that, based on the Court's prior finding, summary judgment is appropriate on plaintiff's trademark infringement, trademark counterfeiting, and unfair competition claims.

Construing the facts in the light most favorable to plaintiff, the Court finds that "PDX hair extensions" is a descriptive mark. Though the phrase "hair extensions" "describe[s] a class of goods rather than an individual product," *New Kids on the Block v. New Am. Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992), "the validity of a trademark is to be determined by viewing the trademark as a whole," *Cal. Cooler*, 774 F.2d at 1455. As a whole, the mark serves to "describe[ ] a person, a place, or an attribute of the product." *New Kids*, 971 F.2d at 306. Further, the registration of the mark on the Supplemental Register supports the inference that the mark is, at the least, descriptive. Accordingly, the mark is protectible only if it has obtained a secondary meaning.

To evaluate evidence of secondary meaning, the Ninth Circuit has identified a number of relevant factors, including: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer; (2) the degree and manner of advertising under the claimed

4

trademark; (3) the length and manner of use of the claimed trademark; and (4) whether use of the claimed trademark has been exclusive. *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996). Especially "weak" marks require a "strong showing of strong secondary meaning." *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1147-51 (9th Cir. 1999).

       Though the bulk of plaintiff's arguments relate to the second prong of a trademark infringement claim, the likelihood of consumer confusion, the threshold inquiry is whether plaintiff has a valid, protectible trademark.[2] On this point, plaintiff's arguments are less comprehensive. Plaintiff attempts to establish secondary meaning through actual confusion, relying on witness statements, one online review, and two voicemails that plaintiff received from defendant's clients. 1st Schoene Decl., Ex. M, at 8, 15; Second Decl. of Kimberly Schoene ("2d Schoene Decl."), ECF [35], Exs. 5, 6, 7. Though evidence of actual confusion may establish secondary meaning, plaintiff's evidence is insufficient to establish that the relevant buying public associates the phrase "PDX hair extensions" with plaintiff's business. As an initial matter, plaintiff provides witness statements from six individuals; however, only two of those statements could plausibly indicate consumer confusion. Even when combined with her other evidence, plaintiff has established only that approximately five individuals were confused by defendants' use of the phrase "PDX hair extensions." Such evidence is insufficient to establish that the relevant buying public at large associates "PDX hair extensions" solely with plaintiff's business. *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002) ("[S]uch a low volume of misdirected mailings could have been the result of clerical errors rather than a belief that 'Japan Telecom' only refers to Japan Telecom.").

       Plaintiff also presents evidence that consumers associate the phrase "PDX hair extensions" with her business through a consumer survey and the business's high Yelp and Vagaro ratings. 2d Schoene Decl., Ex. 9; 1st Schoene Decl., Exs. C, F. However, the survey was completed by only four individuals, all of whom personally know plaintiff and have utilized, or are utilizing, her services, and only three of the

---

[2] Plaintiff references *Brookfield Comms., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036 (9th Cir. 1999) repeatedly in her arguments about the trademark infringement claims. However, in that case, the plaintiff's trademark was registered on the Principal Register, which constitutes prima facie evidence of validity and protectability. *Id.* at 1046-47. *Brookfield* contained no analysis of secondary meaning and is irrelevant to that inquiry.

surveyed individuals affirmed an association with the phrase and plaintiff's business. 2d Schoene Decl., Ex. 9. Similarly, the ratings on Yelp and Vagaro are all, presumably, from plaintiff's past, or present, customers, and plaintiff's proffered evidence contains no insight as to the content of the reviews.[3] Though plaintiff argues that this evidence demonstrates that "PDX Hair Extensions is known as a top-rated hair extensions' specialist in Portland, Oregon," Pl.'s Resp. to Defs.' Mot. for Summ. J., ECF [34], at 9, this is insufficient to establish a "'mental recognition in buyers' and potential buyers' minds," *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995) (affirming district court finding of lack of secondary meaning where only evidence was from entity's own members or associates); *see Japan Telecom*, 287 F.3d at 874 (holding that declarations from business owners who personally knew entity were insufficient to show that association of trademark with business would have occurred without personal relationship). As the Ninth Circuit stated, "Every small business with a descriptive name can point to at least a few former customers who remember its name[.] . . . None of that means that the relevant buying public makes the same associations." *Japan Telecom*, 287 F.3d at 874-75.

    Plaintiff also provides evidence that she has used the trademark in commerce for seven-and-a-half years, that she has continually used the URL registration and domain name "www.pdxhairextensions.com," and that she has used marketing videos, photographs, and reviews to distinguish her trademark. Pl.'s Resp. 6. Whether advertising is sufficient to establish a secondary meaning depends on the advertising's "amount, nature and geographical scope." *Am. Sci. Chem., Inc. v. Am. Hosp. Supply Corp.*, 690 F.2d 791, 793 (9th Cir. 1982). Much of plaintiff's evidence does not aid the Court in determining the amount, nature, or geographic scope of her advertising. For example, plaintiff provides screenshots from a webpage of "www.pdxhair extensions.com" that depict videos; however, this evidence provides no information as to the number of viewers, whether viewers would associate the advertisements with plaintiff's business, or other evidence indicating that plaintiff's advertising efforts have given her trademark secondary meaning. *See* 2d Schoene Decl., Ex. 10. Plaintiff also provides evidence of her

---

[3] Indeed, her evidence indicates that her Vagaro rating is based off only two reviews. *See* 1st Schoene Decl., Ex. F.

business's YouTube channel; however, these screenshots indicate that plaintiff last posted videos four years ago. *See id.*, Ex. 14. Plaintiff provides a screenshot of what the Court presumes to be her business's Facebook page, which has eighteen followers and fifteen likes.[4] *Id.*, Ex. 11, at 1. Plaintiff provides a screenshot of her business's TikTok profile, which has ninety-one followers, and her business's Instagram page, which has 277 followers. *Id.*, Exs. 13, 15. Plaintiff's largest indicators of association are her Instagram and TikTok—however, these advertising methods are available to the world at large and are not evidence of marketing aimed at the relevant buying public for plaintiff's business. That is, plaintiff has provided no evidence that the recipients of these advertising efforts are located in Portland, Oregon, or that the recipients would use, or have used, plaintiff's services. Even if plaintiff had provided such evidence, plaintiff herself estimates that the relevant buying public includes approximately "2,200 people,"[5] and given the seven-and-a-half years that the business has been in existence, plaintiff's evidence indicates that her advertising efforts have had a small-scale effect on consumer association. Pl.'s Resp. 10.

Put simply, plaintiff's additional evidence remains insufficient to establish that "more than a small set of buyers" associate the phrase "PDX hair extensions" exclusively with plaintiff's business. *Japan Telecom*, 287 F.3d at 875. There is no genuine dispute of material fact as to whether the phrase "PDX hair extensions" has obtained a secondary meaning in the relevant buying public. Therefore, plaintiff's trademark, "PDX hair extensions," is not a protectible mark and summary judgment on her federal and state trademark infringement claims is appropriate.

Because unfair competition claims brought under 15 U.S.C. § 1125(a) similarly require evidence of a valid, protectible trademark, summary judgment on plaintiff's unfair competition claim is also appropriate.[6] *See Brookfield Comms., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046-47 (9th Cir. 1999)

---

[4] Plaintiff's evidence also includes what appears to her personal Facebook profile; however, it, again, provides little evidence as to viewership or following. 2d Schoene Decl., Ex. 12.

[5] The Court makes no determination as to the validity or accuracy of this estimate.

[6] Though plaintiff asserts that her unfair competition claim differs from her trademark infringement claim, both claims arise under the Lanham Act, and the Ninth Circuit has routinely addressed these claims together. *See Brookfield Comms.*, 17 F.3d at 1046-47; *New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) (analyzing unfair competition and trademark infringement claim together); *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 Fed.

(noting that both trademark infringement claim and unfair competition claim require evidence of a valid, protectible trademark). Additionally, "a [trademark] counterfeiting claim is a type of infringement claim in which the spurious mark is 'identical with, or substantially indistinguishable from, a registered mark.'" *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 Fed. App'x 401, 405 n.2 (9th Cir. 2018) (unpublished) (quoting 15 U.S.C. § 1127). Because summary judgment is granted on plaintiff's trademark infringement claims, summary judgment on plaintiff's trademark counterfeiting claims is also appropriate.

**B.     Trademark Dilution**

    1.     *Federal Claim*

Trademark dilution claims are reserved "for a select class of marks—those with such powerful consumer associations that even non-competing uses can impinge on their value." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999). Thus, to establish a trademark dilution claim, the plaintiff must show that (1) the mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark. *Id.* at 874. A mark is famous if it is "truly prominent and renowned." *Id.* at 875. In considering whether a mark is famous, courts must consider (1) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was on the Principal Register. 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

This Court previously determined that plaintiff had not provided sufficient evidence that the trademark "PDX hair extensions" is famous because her evidence did not establish a likelihood that her mark is "'widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.'" Op. & Order of Aug. 10, 2023, at 6 (quoting 15 U.S.C. § 1125(c)(2)(A)). Defendants rely on this Court's prior reasoning to argue that summary judgment on this

---

App'x 401, 405 (9th Cir. 2018) (unpublished) (analyzing trademark infringement and unfair competition claims together).

claim is appropriate.

Plaintiff has provided no new evidence that would change this Court's determination. If anything, plaintiff's proffered evidence only substantiates that her mark is not widely recognized by the general consuming public. Plaintiff has continued to assert that her trademark is well-known in a "very small market" with "a very limited population," and only to a "small percentage of persons in the Portland area[.]" Pl.'s Resp. 6. Even viewed in the light most favorable to plaintiff, plaintiff's mark is not famous because she has never attested that it is known, or associated with her business, outside of the Portland, Oregon area. Accordingly, summary judgment on plaintiff's federal trademark dilution claim is appropriate.

2.  *State Law*

ORS § 647.107(1) authorizes courts to grant injunctive relief to "the owner of a mark that is famous and distinctive in [Oregon], inherently or through acquired distinctiveness" against "another person's commercial use of the mark" if "[t]he other person's use began after the mark became famous" and "[t]he use is likely to cause dilution of the famous mark." Under the statute, a mark is considered famous "if the general consuming public of [Oregon] or of a geographic area within [Oregon] widely recognizes the mark as a designation of the source of the mark owner's goods or services." Or. Rev. Stat. § 647.107(2). The relevant factors for determining a mark's famousness under ORS § 647.107 are substantively identical to those articulated under federal law. *Compare* Or. Rev. Stat. § 647.107(2)(a)-(d) *with* 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

Again, though plaintiff continues to assert that her trademark is famous in the Portland, Oregon area, her evidence is insufficient to create a genuine dispute of material fact. Her proffered evidence regarding advertising and publicity of the mark cannot support a finding that the mark has acquired a secondary meaning to the relevant buying public, let alone that it is famous. Plaintiff provided no evidence as to the amount, volume, and geographic extent of sales of goods or services that she offers under the mark. Plaintiff's evidence of the extent to which the mark is actually recognized is comprised solely of witness statements by a select few of her former customers. In short, plaintiff's only evidence that would support the famousness of her mark, in the context of the ORS § 647.107(2) factors, is her registration on

the Supplemental Register. This is insufficient to create a genuine dispute of material fact. Therefore, summary judgment is appropriate on plaintiff's state law trademark dilution claim.

C.     **State Law Unfair Trade Practices Claim**

As noted in this Court's prior order, plaintiff does not identify a basis for her federal claim for unfair and deceptive trade practices, and she has declined to identify one in her response to defendants' motion for summary judgment. Accordingly, summary judgment on plaintiff's federal claim is appropriate, and the Court considers arguments only as related to plaintiff's state claim.

Defendants argue that summary judgment on plaintiff's claim under the Oregon Unfair Trade Practices Act ("UTPA"), ORS § 646.638, is appropriate because that statutory scheme is intended only to protect consumers from unlawful trade practices. Defs.' Mot. for Summ. J., ECF [30], at 7 (citing *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 90 n.4, 566 P.2d 1177 (1977)). Plaintiff, however, argues that nothing in the statute's language expressly precludes individuals, other than consumers, from bringing an action under the statute.

In its prior order, this Court found that plaintiff had not established a likelihood of success on this claim because she failed to identify any specific unlawful trade practices, articulated in the statutory scheme, that defendants had allegedly engaged in, and because Oregon courts have identified the policy and purpose of the UTPA as protecting consumers. Op. & Order of Aug. 10, 2023, at 7. Plaintiff now alleges that defendants engaged in "false advertising" and "false verbal statements." Pl.'s Resp. 15.

Though *pro se* pleadings are "held to less stringent standards," *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011), "false advertising" and "false verbal statements" provide little guidance for the Court to identify precisely what statutory provision plaintiff is alleging defendants violated. However, the Court need not delve into that problem because defendants' argument regarding the scope of the UTPA's protection is dispositive.

Plaintiff is correct that ORS § 647.638(1), on its face, does not preclude competitors from bringing suit under the UTPA; however, statutory interpretation in Oregon relies on more than the plain language of a statute. That is, the legislative history evincing the purpose and policy underlying statutory

10

schemes is relevant in determining the scope and applicability of a statute. *See State v. Gaines*, 346 Or. 160, 171-72, 206 P.3d 1042 (2009) (describing the goal of statutory interpretation as "discerning the legislature's intent").

In *Denson v. Ron Tonkin Gran Turismo, Inc.*, the Oregon Supreme Court highlighted the fact that the original draft of the bill enacting the UTPA "described the proscribed trade practices as 'unfair methods of competition.'" 279 Or. at 90 n.4. However, that language was removed because "the bill seeks to protect consumers rather than businesses." *Id.* Indeed, as recently as last year, the Oregon Supreme Court described the UTPA as "a comprehensive statute that *protects consumers* from unlawful trade practices." *State ex rel. Rosenblum v. Living Essentials, LLC*, 371 Or. 23, 25, 529 P.3d 939 (2023) (emphasis added); *see Clark v. Eddie Bauer LLC*, 371 Or. 177, 186, 532 P.3d 880 (2023) (identifying legislative intent as requiring courts to interpret ORS § 646.638(1) "liberally to protect consumers"). Further, multiple judges in this district have held that the UTPA provides a cause of action only to consumers. *See Pendleton Woolen Mills, Inc. v. Round Up Ass'n*, No. 3:11-CV-0592-AC, 2012 WL 2721856, at *9-12 (D. Or. July 9, 2012); *CollegeNet, Inc. v. Embark.Com, Inc.*, 230 F. Supp. 2d 1167, 1174-75 (D. Or. 2001); *Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1180 (D. Or. 1998), *aff'd*, 185 F.3d 957 (9th Cir. 1999).

Plaintiff has presented no arguments that would contradict the finding that only consumers may bring suit under the UTPA. Therefore, summary judgment on her UTPA claim is appropriate.

## CONCLUSION

Accordingly, defendants' Motion for Summary Judgment, ECF [30], is GRANTED.

IT IS SO ORDERED.

DATED this 11th day of March, 2024.

*[signature]*
Adrienne Nelson
United States District Judge